UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LATOYA NEWKIRK,

                              Plaintiffs,

-against-

COUNTY OF SUFFOLK, CHRISTOPHER A. MCCOY, in his official and individual capacities, and MARK PAV, in his official and individual capacities,

                              Defendants.

**DEFENDANT COUNTY OF SUFFOLK AND MARK PAV'S STATEMENT PURSUANT TO LOCAL RULE 56.1**

**CV17-2960 (MKB)(PK)**

Defendants County of Suffolk and Mark Pav (County defendants) submit the following as and for its Statement Pursuant to Local Rule 56.1.[1]

1) On May 16, 2017 the plaintiff filed the complaint in the instant matter. (DE 1).

2) On March 16, 2017 at approximately 10:30 a.m. plaintiff was a passenger in a vehicle that was stopped by defendants Officer Mark Pav and Officer Christopher McCoy. (See Exhibit A, Deposition transcript of plaintiff Latoya Newkirk dated October 8, 2019 at *70-71, *169).

3) The person driving the vehicle in which the plaintiff was a passenger was a male named Larry Abiola. (Exhibit A, Newkirk at *67-68).

4) Officer Pav was driving the police vehicle that stopped the plaintiff. (See Exhibit B, Deposition transcript of Mark Pav dated March 20, 2020 at *18).

5) Prior to the stop Officer Pav had not seen the occupants of the vehicle. (Exhibit B, Pav at *33)

6) Officer Pav did not know if the occupants of the vehicle were male or female when he made the stop. (Exhibit B, Pav at *33)

---

[1] This Office does not represent Co-defendant former Suffolk Police Officer Christopher McCoy.

7) Once stopping the vehicle, Officer Pav approached the driver's side and Officer McCoy approached the passenger side. (Exhibit A, Newkirk at *105)

8) Officer McCoy asked the plaintiff for identification and the plaintiff produced a benefits card. (Exhibit A, Newkirk at * 108)

9) Officer McCoy ran the plaintiff's identification and returned to the vehicle and advised the plaintiff that she had warrants for her arrest. (Exhibit A, Newkirk at *114).

10) The plaintiff had warrants for her arrest. (Exhibit E, Suffolk County Police Department Warrant paperwork).

11) The plaintiff retrieved some paper from her purse that she believed showed that she did not have warrants. (Exhibit A, Newkirk at * 114)

12) Plaintiff showed McCoy the paperwork from her purse. (Exhibit A, Newkirk at * 116).

13) When the plaintiff showed the paperwork to McCoy she did know the exact location of Officer Pav. (Exhibit A, Newkirk at * 116-117)

14) The plaintiff was then told by McCoy that the paperwork did not indicate that she had no warrants, that the system said she had warrants and she got out of the car. (Exhibit A, Newkirk at *119)

15) When she got out of the car Officer Pav reached into the car and took her bag. She then told him he did not have permission to take her purse or go into the car. (Exhibit A, Newkirk at *119)[2]

16) When Officer Pav reached into the car, the plaintiff's back was to the rear passenger door of Mr. Abiola's vehicle and McCoy was in front of her facing the car. (Exhibit A, Newkirk at *120-121)

---

[2] The defendants dispute some of the facts in this Rule 56 statement that are based upon the deposition testimony of Latoya Newkirk. However, for the purposes of this motion only, we do not dispute these facts, as the standard for summary judgment is to view the facts in a light most favorable to the plaintiff. The defendants submit that even viewing the facts in a light most favorable to the plaintiff, summary judgment is warranted.

17)     Officer Pav put the purse on hood of Mr. Abiola's vehicle or the police vehicle and went through the bag.  (Exhibit A, Newkirk at 121).

18)     While Officer Pav was looking through her purse, McCoy put her in handcuffs because he didn't want her to stop Officer Pav from searching the purse.  (Exhibit A, Newkirk at *121)

19)     Plaintiff was handcuffed as soon as she started objecting to what Officer Pav was doing. (Exhibit A, Newkirk at * 123)

20)     While searching her purse Officer Pav said you're going to the precinct so all your stuff has to go with you. (Exhibit A, Newkirk at *122)

21)     When plaintiff was handcuffed she was up by the rear passenger door of Mr. Abiola's car. (Exhibit A, Newkirk at *126)

22)     While Officer Pav was looking through the plaintiff's bag and after she had been handcuffed McCoy searched her. (Exhibit A, Newkirk at *127)

23)     When McCoy searched her she was still in the same spot by Mr. Abiola's car.  (Exhibit A, Newkirk at *127)

24)     When the plaintiff was handcuffed and McCoy started to search her, Mr. Abiola's car was still at the scene. (Exhibit A, Newkirk at * 128-129)

25)     While the plaintiff was being searched Mr. Abiola drove away and the plaintiff remained in the same spot where Mr. Abiola's car had been.  (Exhibit A, Newkirk at * 127-128)

26)     Mr. Abiola left as McCoy was starting to do the search.  (Exhibit A, Newkirk at *130).

27)     As he started the search, McCoy told the plaintiff to lift and shake out her bra and the plaintiff replied she could not because she was in cuffs. (Exhibit A, Newkirk at *131)

28)     When plaintiff told McCoy she can't shake out her bra, McCoy said "I'll do it." (Exhibit A, Newkirk at * 132).

29)     When McCoy searched the plaintiff he checked her coat pockets and plaintiff remembers him going into her bra. (Exhibit A, Newkirk at *129).

30) Mr. Abiola pulled off before McCoy touched the plaintiff under her bra. (Exhibit A, Newkirk at * 129).

31) McCoy was the only person that searched the plaintiff. (Exhibit A, Newkirk at * 129).

32) Mr. Abiola could have still been at the scene when McCoy searched the plaintiff's bra. (Exhibit A, Newkirk at * 131).

33) Mr. Abiola dove away and did a u-turn and at that point Officer McCoy brought the plaintiff to an area by the front passenger door of the police car and it was at that location that he reached into her bra. (Exhibit A, Newkirk at *139; *132-133; *142).[3]

34) Plaintiff described the area where she was brought and searched by Officer McCoy as the "front end of the police car"; the "front passenger"; "right in front of" the front passenger side door of the police car; the front passenger door of the police car. (Exhibit A, Newkirk at *133-7, 133-9, 133-12 ; 133-14; 142-16).

35) When McCoy reached into the plaintiff's bra he put his hands under her sweater from underneath and put his hands on her breasts. (Exhibit A, Newkirk at 143)

36) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff's back was toward the police car. (Exhibit A, Newkirk at * 148).

37) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts, if the plaintiff leaned back her back would have come in contact with the police car. (Exhibit A, Newkirk at *149).

38) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts, he was facing the plaintiff.    (Exhibit A, Newkirk at *149).

---

[3] The defendants submit the testimony cited is inconsistent with plaintiff's earlier testimony that she was searched at the location of the rear of Mr. Abiola's vehicle (see paragraphs 22-29).  Regardless of the version the plaintiff chooses to adopt, summary judgment is appropriate.

39) When McCoy had the plaintiff at the front passenger side of the police car and reached into her bra and put his hands on her breasts Officer Pav had just thrown the plaintiff's purse into the trunk of the police vehicle and got into the driver's seat. (Exhibit A, Newkirk at *139; *143).

40) Plaintiff does not remember where Officer Pav was when McCoy started searching her other than saying he was searching her purse on the hood of Mr. Abiola's vehicle or the police car. (Exhibit A Newkirk at *140)

41) When Officer Pav put the plaintiff's purse into the trunk of the police car the plaintiff was on the passenger side of the police car. (Exhibit A Newkirk at *144)

42) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts she was closer to the back passenger side of the police vehicle. (Exhibit A Newkirk at *150-151)[4]

43) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was facing away from the police car at an angle. (Exhibit A Newkirk at *153)

44) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was facing at an angle toward the front of the police car. (Exhibit A Newkirk at *154)

45) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was standing at a 45 degree angle with her back toward the rear of the police vehicle. (Exhibit A Newkirk at *157-158)

46) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was located behind the open rear passenger door of the police vehicle. (Exhibit A Newkirk at *158)

---

[4] The defendants submit the testimony cited is inconsistent with plaintiff's earlier testimony that she was searched at the location of the rear of Mr. Abiola's vehicle (see paragraphs 22-29), and the testimony wherein she says she was searched at the front passenger door of the police car with her back to the vehicle (see paragraphs 32-38). Regardless of the version the plaintiff chooses to adopt, summary judgment is appropriate.

47) When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts he was in a position where he was able to put his hands under her sweater from in front of her. (Exhibit A Newkirk at *159)

48) When plaintiff was behind the open rear passenger door of the police vehicle and McCoy put his hands under the plaintiff's sweater and put his hands on her breasts, the plaintiff was looking at McCoy. (Exhibit A Newkirk at *159)

49) When the plaintiff was behind the open rear passenger door of the police vehicle and McCoy put his hands under the plaintiff's sweater Officer Pav was in the driver's seat of the police vehicle. (Exhibit A Newkirk at *159)

50) After McCoy put his hand under the plaintiff's sweater he zipped the plaintiff's jacket back up. (Exhibit A Newkirk at *160)

51) Plaintiff believes Officer Pav heard the sound of the jacket zipping and said "we can search her at the precinct." (Exhibit A Newkirk at *160)

52) After the plaintiff had produced the paper that she believed was a warrant recall sheet McCoy brought her to the back of the vehicle. (Exhibit B, Pav at * 59)

53) At the point in time when McCoy brought the plaintiff to the back of the car Officer Pav had not seen a frisk or search of the plaintiff. (Exhibit B, Pav at * 61)

54) When McCoy took the plaintiff to the back of the vehicle Officer Pav turned his attention away from the plaintiff and went back to the driver of the vehicle. (Exhibit B, Pav at * 61)

55) When done speaking to the driver of the vehicle Officer Pav went back to the police car and Newkirk was in the backseat of the police car. (Exhibit B, Pav at * 61)

56) Officer Pav does not know if McCoy searched or frisked the plaintiff at the scene of the stop. (Exhibit B, Pav at * 64)

57) Officer Pav did not have any conversation with McCoy about any frisk or search. (Exhibit B, Pav at * 64-65)

58) Officer Pav did not see McCoy place his hands on the plaintiff to frisk or search her. (Exhibit B, Pav at * 71)

59) Officer Pav did not see McCoy grab the plaintiff's bra on the side of the road. (Exhibit B, Pav at * 72)

60) Officer Pav did not hear the plaintiff protest to stop touching her breasts. (Exhibit B, Pav at * 72)

61) Plaintiff has no evidence that Officer Pav ever witnessed or was aware at anytime on March 16, 2017 that McCoy had searched, frisked or touched the plaintiff in an inappropriate manner at the scene of the vehicle stop.[5]

62) After being placed in the police vehicle the plaintiff was taken directly from the scene to the Suffolk County First Precinct. (Exhibit A Newkirk at *162)

63) On the way to the police station the plaintiff started having an anxiety attack and asked to have the window rolled down, which the officers did. (Exhibit A Newkirk at *162)

64) On the way to the police station the plaintiff made inquiry about the marijuana and paraphernalia charges. (Exhibit A Newkirk at *163)

65) Other than the discussion of marijuana charges Officer Pav and McCoy did not talk about anything relating to the plaintiff. (Exhibit A Newkirk at *165)

66) Plaintiff arrived at the precinct around 11:00 a.m. (Exhibit A Newkirk at *170)

---

[5] The defendants may point to the absence of evidence in the record to discharge its burden on an issue for which the plaintiff has the burden of proof, in this case that Officer Pav witnessed or was aware that McCoy searched, frisked or touched the plaintiff in an inappropriate way at the scene of the stop. The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents ... [and] affidavits or declarations," Fed.R.Civ.P. 56(c)(1)(A), "which it believes demonstrate [s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may also meet its initial burden that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(B); *Hill v. Melvin,* No. 05 Civ. 6645, 2006 WL 1749520, at *4 (S.D.N.Y. June 27, 2006) ("The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof."); *Fuertado v. City of New York,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) ("The moving party may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim.").

67) Upon entering the precinct the plaintiff was asked questions by an officer at a window. (Exhibit A Newkirk at *166)

68) Plaintiff was brought into a holding room and handcuffed to a table. (Exhibit A Newkirk at *170)

69) Plaintiff was searched in the mugshot area of holding room by Officer McCoy. (Exhibit A Newkirk at *173)

70) When searching the plaintiff McCoy put his hands up her shirt and on her legs. (Exhibit A Newkirk at *173)

71) Plaintiff did not know where Officer Pav was when McCoy searched her. (Exhibit A Newkirk at *173)

72) There were no other police officers in the holding room when McCoy searched the plaintiff. (Exhibit A Newkirk at *175)

73) Officer Pav was not in the room when McCoy searched the plaintiff. (Exhibit A Newkirk at *176-177)

74) Plaintiff was brought to an interrogation room known as the Juvenile Squad Room. (Exhibit A Newkirk at *178)

75) Plaintiff was brought to the Juvenile Squad Room twice. (Exhibit A Newkirk at *186)

76) Plaintiff has a hard time telling one visit to the Juvenile Squad Room from the other. (Exhibit A Newkirk at *186-187)

77) Plaintiff does not recall if Officer Pav was present the first time she was brought to the Juvenile Squad Room. (Exhibit A Newkirk at *187. * 190)

78) When the plaintiff was brought to the Juvenile Squad Room for the first time she did not know why she was being brought there. (Exhibit A Newkirk at *190)

79) When the plaintiff was in the Juvenile Squad Room for the first time, McCoy asked her she had any information about where to buy drugs or who might be selling drugs. (Exhibit A Newkirk at *191-192)

80) When plaintiff was in the Juvenile Squad Room she was abused by McCoy. (Exhibit A Newkirk at *198)

81) When McCoy abused the plaintiff Pav was not present in the room. (Exhibit A Newkirk at *200)

82) Officer Pav was in the Juvenile Squad Room for a brief period of time before McCoy abused her. (Exhibit A Newkirk at *203)

83) Officer Pav left the Juvenile Squad Room before McCoy abused the plaintiff. (Exhibit A Newkirk at *204)

84) McCoy abused the plaintiff on two occasions and it happened very similar on both occasions. (Exhibit A Newkirk at * 206)

85) McCoy stopped abusing the plaintiff when there was a noise outside the door. (Exhibit A Newkirk at *207)

86) McCoy brought the plaintiff back to the holding room. (Exhibit A Newkirk at *209)

87) When McCoy brought the plaintiff back to the holding room Officer Pav was not with them. (Exhibit A Newkirk at *209)

88) Plaintiff was brought back to the Juvenile Squad Room at around 2:00 p.m. (Exhibit A Newkirk at *210)

89) The second time the plaintiff was brought to the Juvenile Squad Room she was taken out of the room to be searched by a female officer. (Exhibit A Newkirk at *211-214)

90) When the plaintiff was taken from the Juvenile Squad Room to be searched by the female officer Police Officer Pav was not there. (Exhibit A Newkirk at *214)

91) Plaintiff was searched by the female officer in the cells across from the Juvenile Squad Room. (Exhibit A Newkirk at *214)

92) When the female officer searched the plaintiff the plaintiff did not say anything to the female officer about what McCoy had done to her up to that point in time. (Exhibit A Newkirk at *215)

93) The search by the female officer took five minutes. (Exhibit A Newkirk at *215)

94) The female officer that searched the plaintiff was Police Officer Delfina Rivera. (Exhibit D, deposition testimony of Delfina Rivera dated March 11, 2020 at *38-39)

95) When Officer Rivera first observed the plaintiff in the Juvenile Squad Room the plaintiff was happy and smiling. (Exhibit D, Rivera at *38-39, 59-60).

96) When Officer Rivera searched the plaintiff in the cellblock the plaintiff was happy. (Exhibit D, Rivera at *38-39, 59-60)

97) When Officer Rivera searched the plaintiff she did not have any reason to believe that the plaintiff was in distress. (Exhibit D, Rivera at *60-61)

98) When Officer Rivera searched the plaintiff she did not have any reason to believe that the plaintiff may have been abused at that point. (Exhibit D, Rivera at *61)

99) When Officer Rivera searched the plaintiff she did not have any reason to believe that the plaintiff may have been afraid at that point. (Exhibit D, Rivera at *61)

100) After the search, the female officer brought the plaintiff back to the Juvenile Squad Room. (Exhibit A Newkirk at *215)

101) McCoy was in the Juvenile Squad Room when the female officer brought the plaintiff back to the Juvenile Squad Room. (Exhibit A Newkirk at *216)

102) The plaintiff does not recall if Officer Pav was present in the Juvenile Squad Room when the female officer brought her back. (Exhibit A Newkirk at *216)

103) Officer Pav left the Juvenile Squad Room at 2:00 p.m. right after the plaintiff was searched. (Exhibit A Newkirk at *217)

104) At a point in time after Officer Pav left the Juvenile Squad Room Officer McCoy abused the plaintiff. (Exhibit A Newkirk at *218)

105) After McCoy abused the plaintiff he brought her back to the holding room and handcuffed her to the table. (Exhibit A Newkirk at *227)

106) From the time Officer Pav left the Juvenile Squad Room until the time McCoy brought the plaintiff back to the holding room the plaintiff did not see Officer Pav at all. (Exhibit A Newkirk at *229)

107) When plaintiff was brought back to the holding room another arrestee named Victoria Harris was present. (Exhibit A Newkirk at *229-230)

108) Victoria Harris was not brought into the precinct until 3:50 p.m. (See Exhibit C; Prisoner Activity Log for Victoria Harris).

109) Officer McCoy left the holding room right after handcuffing the plaintiff to the holding room table. (Exhibit A Newkirk at *231)

110) Officer Pav was not in the holding room when McCoy left. (Exhibit A Newkirk at *231)

111) Officer Pav did not come into the holding room until after McCoy had left. (Exhibit A Newkirk at *232)

112) When plaintiff saw Officer Pav in the holding room plaintiff asked Officer Pav if McCoy was married. (Exhibit A Newkirk at *234)

113) When plaintiff asked Officer Pav if McCoy was married, Officer Pav asked plaintiff "Why? You like white chocolate?" (Exhibit A Newkirk at *234)

114) A couple of hours after Officer Pav and McCoy had left the precinct the plaintiff asked another officer if she could go to the hospital. (Exhibit A Newkirk at *234-238)

115) Plaintiff asked to go to the hospital because she was having an anxiety attack. (Exhibit A Newkirk at *235)

116) Plaintiff was given her medication while at the first precinct. (Exhibit A Newkirk at *241)

117) At no time after being abused by McCoy until she was released from court the next day did the plaintiff say anything to anyone about the abuse she was subjected to by McCoy. (Exhibit A Newkirk at * 244-248)

118) Upon arriving at the first precinct Officer McCoy to the plaintiff to the Sergeants window to log her in. (Exhibit B, Pav at *80)

119) Upon arriving at the first precinct Officer Pav went into a computer room to search the plaintiff's bag. (Exhibit B, Pav at *80)

120) After searching the plaintiff's bag Officer Pav brought the bag to Community Support Office (CSU) in the basement of the precinct. (Exhibit B, Pav at *82)

121) Officer Pav got to the basement around 11:05 a.m. (Exhibit B, Pav at *85)

122) When Officer Pav got to the basement he started doing the arrest paperwork for the plaintiff. (Exhibit B, Pav at *85)

123) It took Officer Pav about two hours to so the arrest paperwork. (Exhibit B, Pav at *86)

124) Officer Pav went upstairs in the precinct sometime between 1:00 p.m. and 2:00 p.m., but it was closer to 2:00 p.m. (Exhibit B, Pav at *91-92)

125) Prior to going upstairs Officer Pav had lunch with McCoy and other officers in the CSU office in the basement. (Exhibit B, Pav at *93-94).

126) While in the CSU office Officer Pav had a conversation with McCoy about debriefing the plaintiff. (Exhibit B, Pav at *92)

127) McCoy went upstairs to start the debriefing before Officer Pav. (Exhibit B, Pav at *93-97)

128) While in the basement, McCoy did not make any statements about Newkirk other than about the debriefing. (Exhibit B, Pav at *104)

129) When Officer Pav entered the debriefing room, McCoy was already speaking to the plaintiff. (Exhibit B, Pav at *106)

130) Officer Pav was in the Juvenile Squad Room for around 10 minutes. (Exhibit B, Pav at *107)

131) Officer Pav left the Juvenile Squad Room close to 2:00 p.m. (Exhibit B, Pav at *107)

132) Office Pav left the Juvenile Squad Room to meet with Narcotics Unit personnel in the back parking lot. (Exhibit B, Pav at *107)

133) The meeting with the Narcotics Unit personnel lasted until approximately 2:13 p.m. (Exhibit B, Pav at *110)

134) At a time after 2:13 p.m. McCoy went down to the basement. (Exhibit B, Pav at *111)

135) Pav and McCoy went outside to meet with the Narcotics personnel again. (Exhibit B, Pav at *112)

136) When McCoy was downstairs Pav discussed the debriefing of the plaintiff and Pav expressed that he did not believe she had any useful information. (Exhibit B, Pav at *112)

137) After going outside, it was determined that the Narcotics operation would be delayed and McCoy was unable to participate because he had to leave the precinct at 3:00 p.m. (Exhibit B, Pav at *115)

138) Officer Pav asked another officer to assist and went out with the Narcotics team. (Exhibit B, Pav at *115)

139) From the time Officer Pav left the debriefing of the plaintiff in the Juvenile Squad Room until the time he left for the narcotics investigation, Pav was never on the main floor of the precinct. (Exhibit B, Pav at *116)

140) During this same period of time the plaintiff was always on the main level of the precinct. (Exhibit B, Pav at *116)

141) During the narcotics investigation Officer Pav made an arrest of a female named Victoria Harris. (Exhibit B, Pav at *117; Exhibit C, Harris Activity Log)

142) Officer Pav returned to the first precinct after the narcotics arrest at approximately 3:50 p.m. (Exhibit C).

143) When Officer Pav returned to the first precinct after having made the narcotics arrest he noticed that the Prisoner activity Log for the plaintiff was blank for 11:25 on. (Exhibit B, Pav at *122)

144) Officer Pav filled in the entries on the Prisoner Activity Log from 11:55 to 17:30 (5:30 p.m.) (Exhibit B, Pav at *121)

145) Officer Pav filled in the entries from 11:55 until 3:30 p.m. but he did not actually witness any of the events the entries reflected. (Exhibit B, Pav at *123)

146) After Officer Pav left the precinct for the narcotics assignment McCoy texted him with information regarding the time the plaintiff was searched. (Exhibit B, Pav at *134-135)

147) When Officer Pav returned to the precinct he assumed that Officer McCoy had filled out the Prisoner Activity Log for the plaintiff because McCoy was dealing with the plaintiff at the specific times. (Exhibit B, Pav at *152)

148) When Officer Pav saw that the Prisoner Activity Log was empty he just went down and filled in the activity log. (Exhibit B, Pav at *152)

149) Officer Pav filled in the activity log because he was in a rush and on overtime with another arrestee. (Exhibit B, Pav at *152)

150) On March 16, 2017 Officer Pav was required to keep a memo book. (Exhibit B, Pav at *185)

151) Officer Pav did not complete a memo book for March 16, 2017. (Exhibit B, Pav at *186-187)

152) Officer Pav's Sergeant did not always require Officer Pav to keep a memo book. (Exhibit B, Pav at *185-186)

153) Officer Pav did not have a memo book for the day before March 16, 2017. (Exhibit B, Pav at *186)

154) Officer Pav did not have a memo book for the day after March 16, 2017. (Exhibit B, Pav at *186)

155) At no time on March 16, 2017 was Officer Pav ever aware, nor did he become aware that Christopher McCoy had sexually abused or committed misconduct to the plaintiff. (Exhibit B, Pav at *195)

156) Officer Pav was not personally involved in any decision to permit the plaintiff to go to the hospital or not.

157) Plaintiff has no evidence that Officer Pav was personally involved in any decision to permit the plaintiff to go to the hospital or not.

158) No custom and/or policy of the Suffolk County Police Department caused any member of the Suffolk County Police Department to violate the plaintiff's constitutional rights.

159) Plaintiff has no evidence that any custom and/or policy of the Suffolk County Police Department caused any member of the Suffolk County Police Department to violate the plaintiff's constitutional rights.

160) Plaintiff never filed a Notice of Claim pursuant to the New York State General Municipal Law in relation to any of her claims.

Dated: Hauppauge, New York

February 11, 2021

Yours, etc.

DENNIS M. COHEN
SUFFOLK COUNTY ATTORNEY
Attorney for Defendant
County of Suffolk
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788

BY: *Brian C. Mitchell*
Brian C. Mitchell
Assistant County Attorney

To:

Brian T. Egan, Esq.
Christopher Bianco, Esq.
Egan and Golden, LLP
96 South Ocean Avenue
Patchogue, New York 11722