UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**LATOYA NEWKIRK,**

Plaintiffs,

-against-                                                   **CV17-2960 (MKB)(PK)**

**COUNTY OF SUFFOLK, CHRISTOPHER A.
MCCOY, in his official and individual capacities, and
MARK PAV, in his official and individual capacities,**

Defendants.

**COUNTY OF SUFFOLK AND MARK PAV'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION PURSUANT TO RULE 56**

Dated: Hauppauge, New York
        February 11, 2021

Respectfully submitted,

DENNIS M. COHEN
SUFFOLK COUNTY ATTORNEY
Attorney for Defendant
County of Suffolk
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788

By:  Brian C. Mitchell
Assistant County Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF RELEVANT FACTS .......................................................................... 3

STANDARD OF REVIEW .............................................................................................. 3

POINT I
PLAINTIFF'S CLAIM AGAINST OFFICER PAV FOR FAILING TO
INTERVENE MUST BE DISMISSED AS THERE IS NO EVIDENCE THAT
OFFICER PAV OBSERVED OR HAD REASON TO KNOW THAT
CHRISTOPHER MCCOY WOULD VIOLATE THE PLAINTIFF'S
CONSTITUTIONAL RIGHTS .......................................................................................7

POINT II
PLAINTIFF'S MONELL CLAIM AGAINST THE COUNTY
MUST BE DISMISSED AS THERE IS NO COUNTY POLICY OR
PROCEDURE THAT CAUSED THE ALLEGED VIOLATION
OF HER CONSTITUTIONAL RIGHTS ...................................................................... 14

    False Arrest ........................................................................................................ 20

    Denial of Medical Care ..................................................................................... 20

    Qualified Immunity ........................................................................................... 21

POINT III
PLAINTIFF'S PENDANT STATE CLAIMS MUST BE DISMISSED
FOR FAILING TO COMPLY WITH THE REQUIREMENTS OF
GEN. MUN. LAW § 50H ............................................................................................. 23

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

*Amnesty Am. v. Town of West Hartford,*
    361 F.3d 113 (2d Cir.2004).................................................................................... 17, 18
*Anderson v. Branen,*
    17 F.3d 552 (2d Cir. 1994)....................................................................................... 7, 12
*Anderson v. Criegton,*
    483 U.S. 635 (1987)...................................................................................................... 21
*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, (1986)..................................................................................................... 4, 5
*Ashcroft v. al–Kidd,*
    563 U.S. 731, 131 S.Ct. 2074 (2011) ........................................................................ 22
*Back v. Hastings on Hudson Union Free School Dist.,*
    365 F.3d 107 (2d Cir. 2004) ...................................................................................... 20
*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,*
    520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ............................... 15, 17, 18
*Betts v. Shearman,*
    751 F.3d 78 (2d. Cir. 2014)........................................................................................ 21
*Brandon v. City of New York,*
    705 F.Supp.2d 261 (S.D.N.Y. 2010)......................................................................... 15
*Brosseau v. Haugen,*
    543 U.S. 194, 125 S.Ct. 596, (2004) .......................................................................... 22
*Brown v. Eli Lilly & Co.,*
    654 F.3d 347 (2d Cir.2011)......................................................................................... 5, 6
*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .................................... 3, 4, 5
*Chandok v. Klessig,*
    632 F.3d 803 (2d Cir.2011)......................................................................................... 4
*City of Canton v. Harris,*
    489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)........................... 15, 17, 18, 19
*Connick v. Thompson,*
    563 U.S. 51 ...................................................................................................... 16, 17, 18
*DeFabio v. East Hampton Union Free School District,*
    623 F.3d 71 (2d Cir. 2010)......................................................................................... 6
*F.D.I.C. v. Great American Ins. Co.,*
    607 F.3d 288 (2d Cir.2010)........................................................................................ 5
*Fabrikant v. French,*
    691 F.3d 193 (2d Cir.2012)........................................................................................ 5
*Farmer v. Brennan,*
    511 U.S. 825(1994)....................................................................................................... 20
*Figueroa v. Mazza,*
    825 F.3d 89 (2d Cir. 2016).......................................................................................... 13
*Fuertado v. City of New York,*
    337 F.Supp.2d 593 (S.D.N.Y.2004)........................................................................... 3

*Gagnon v. Ball,*
   696 F.2d 17 (2d Cir.1982)....................................................................................... 7

Ha*rdy v. New York City Health & Hosp. Corp.,*
   164 F.3d 789 (2d Cir. 1999) ................................................................................... 23

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ............................................................................................... 21

*Hayut v. State Univ. of N.Y.,*
   352 F.3d 733 (2d Cir.2003)....................................................................................... 5

*Hill v. Melvin,*
   No. 05 Civ. 6645, 2006 WL 1749520 (S.D.N.Y. June 27, 2006)................................. 3

*Jean-Laurent v. Wilkerson,*
   461 F. App'x 18 (2d Cir. 2012) ................................................................................. 8

*Jean-Laurent v. Wilkinson,*
   540 F. Supp. 2d 501 (S.D.N.Y. 2008)...................................................................... 13

*Jeffreys v. City of New York,*
   426 F.3d 549 (2d Cir.2005)............................................................................... 4, 5, 6

*Jenkins v. City of New York,*
   478 F.3d 76 (2d Cir. 2007)..................................................................................... 21

*Jones v. Town of E. Haven,*
   691 F.3d 72 (2d Cir. 2012) .......................................................................... 15, 16, 19

*Jones v. Westchester County,*
   182 F.Supp.3d 134 (S.D.N.Y. 2016)........................................................................ 15

*Katel Ltd. Liability Co. v. AT & T Corp.,*
   607 F.3d 60 (2d Cir. 2010).........................................................................................6

*Lyons v. Lancer Ins. Co.,*
   681 F.3d 50 (2d Cir.2012).........................................................................................6

*Major League Baseball v. Salvino,*
   542 F.3d 290 (2d Cir. 2008)............................................................................... 6, 11

*Malley v. Briggs,*
   475 U.S. 335, 106 S.Ct. 1092 (1986) ...................................................................... 22

*McCarthy v. Dun & Bradstreet Corp.,*
   482 F.3d 184 (2d Cir.2007)................................................................................... 3, 6

*Miner v. Clinton County, New York,*
   541 F.3d 464 (2d Cir.2008) ......................................................................................6

*Monell v. Department of Social Services,*
   436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)........................................... 1, 14

*Mullenix v. Luna,*
   136 S. Ct. 305 (2015)............................................................................................. 22

*Nicholson v. Scoppetta,*
   344 F.3d 154 (2d Cir. 2003).................................................................................... 19

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't,*
   577 F.3d 415 (2d Cir. 2009).................................................................................... 19

*O'Neill v. Krzeminski,*
   839 F.2d 9 (2d Cir.1988).......................................................................................... 7

*Platt v. Incorporated Village of Southampton,*
   391 Fed. Appx. 62 (2d Cir. Aug. 30, 2010) ............................................................. 20

*Ramos v. Baldor Specialty Foods, Inc.,*
    687 F.3d 554 (2d Cir.2012)................................................................................ 4, 5
*Reichle v. Howards*,
    566 U.S. 658, 132 S.Ct. 2088, (2012) ........................................................... 22
*Rentas v. Ruffin*,
    816 F.3d 214 (2d Cir. 2016)............................................................................. 23
R*eynolds v. Giuliani,*
    506 F.3d 183 (2d Cir. 2007)............................................................................. 18
*Ricci v. DeStefano,*
    557 U.S. 557 (2009)................................................................................... 3, 4, 5
*Ricciuti v. N.Y.C. Transit Auth.,*
    124 F.3d 123 (2d Cir. 1997)............................................................................. 13
*Rojas v. Roman Catholic Diocese of Rochester,*
    660 F.3d 98 (2d Cir.2011)............................................................................. 4, 5
*Russo v. City of Bridgeport,*
    479 F.3d 196 (2d Cir.2007)............................................................................. 21
*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2151, (2001) ........................................................... 22
*Scott v. Harris,*
    550 U.S. 372 (2007)............................................................................................ 6
*Spagnuolo v. Howell,*
    814 F. App'x 614 (2d Cir. 2020) .................................................................... 20
*Spinelli v. City of New York,*
    579 F.3d 160 (2d Cir.2009)........................................................................... 4, 5
*Taylor v. Ridley,*
    904 F.Supp.2d 222(E.D.N.Y. 2012) .................................................................. 5
*Theodat v. City of New York,*
    818 F. App'x 79 (2d Cir. 2020) .......................................................................... 8
*Valdez v. City of New York,*
    18 NY3d 69 (2011) ......................................................................................... 23
*Valverde v. Folks,*
    No. 1:19-CV-08080-MKV, 2020 WL 5849515 (S.D.N.Y. Sept. 30, 2020)............... 7, 8
*Varricchio v. Cty. of Nassau,*
    702 F. Supp. 2d 40 (E.D.N.Y. 2010) ............................................................... 13
*Vivenzio v. City of Syracuse,*
    611 F.3d 98 (2d Cir. 2010)................................................................................. 5
W*alker v. City of New York,*
    974 F.2d 293 (2d Cir.1992)............................................................................. 18
W*ray v. City of New York,*
    490 F.3d ........................................................................................................... 18
*Zalaski v. City of Bridgeport Police Department,*
    613 F.3d 336 (2d Cir. 2010)......................................................................... 5, 11

## PRELIMINARY STATEMENT

The County of Suffolk, and Police Officer Mark Pav (County defendants)[1], defendants in this §1983 civil rights action, submit this memorandum of law in support of its motion for summary judgment dismissing the complaint ("the complaint") filed by plaintiff Latoya Newkirk.

The plaintiff Latoya Newkirk brings this action pursuant to 42 USC § 1983 alleging that she was subjected to a sexual assault by defendant McCoy after her arrest on March 16, 2017.   She further alleges that defendant Police Officer Pav was aware of the assault and failed to intervene to prevent McCoy's conduct.   In addition she has a claim of false arrest, a denial of medical care and a claim pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) against the County. The defendants respectfully submit that summary judgment is appropriate on the claims against Officer Pav and the County.

Plaintiff's claims arise out of a traffic stop of a vehicle by Officer Pav and McCoy in which she was a passenger.   During the stop it was determined that the plaintiff had outstanding bench warrants that subjected her to arrest.    The plaintiff alleges that when she was searched at the scene of her arrest, Officer McCoy put his hand under her sweater and put his hands on her breasts.  The plaintiff further claims, without any evidence, that Officer Pav observed this conduct while he was seated in the driver's seat the police vehicle.   The plaintiff was then transported to the Suffolk County First Police Precinct.    While at the precinct, the plaintiff was escorted into an interview room by

---

[1] This Office does not represent Co-defendant former Suffolk Police Officer Christopher McCoy.

Officer McCoy and was forced to perform oral sex on McCoy.   Officer Pav was not present when the plaintiff was assaulted and in fact had left the precinct building to assist with an independent narcotics investigation. [2]   There is no dispute that the plaintiff was subjected to the sexual abuse by McCoy, as he has admitted to the conduct and has plead guilty to a Federal misdemeanor.

The complaint filed by the plaintiff, while not entirely clear, appears allege conduct against Officer Pav on a theory of failing to intervene in the unconstitutional conduct of Officer McCoy.   However, there is no evidence in the available record that would plausibly support the inference that Officer Pav knew or had reason to know that Ms. Newkirk's was going to be subjected to a violation of her constitutional rights by McCoy.   Nor is there evidence that Officer Pav had a realistic opportunity to intervene in any conduct of which it is alleged he was aware.   The defendants respectfully submit, that even when viewing the facts in a light most favorable to the plaintiff, she has failed to establish a claim against Officer Pav that can withstand summary judgment.

Further, and as explained below, the defendants' respectfully submit that based upon the available admissible evidence in the record, summary judgment is also appropriate on the *Monell* claim against the County.   The plaintiff can produce no evidence that a policy or custom on the part of the County caused the alleged constitutional violations by the individual defendants, nor is there any evidence of a widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians, or that any  policymaking official was aware of constitutional injury,

---

[2] There is a dispute in fact as the number of time the plaintiff was taken into the interview room.   The plaintiff claims she was assaulted on two occasions, but other evidence reveals she was only taken into the interview room a single time.   It is undisputed, however, that Officer Pav was not present at anytime that the plaintiff claims she was subjected to a sexual assault.

or the risk of constitutional injury, but failed to take appropriate action to prevent the violations of constitutional rights.[3]

## STATEMENT OF RELEVANT FACTS

The relevant facts are set forth in the Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 and the exhibits therein and attached thereto and are adopted as if more fully set forth herein.   Specific facts, which the defendants assert are not in dispute or which have not been sufficiently disputed or controverted by the plaintiff, and which are salient to the arguments advanced by the defendants are included within the individual Points dedicated to those arguments.

## STANDARD OF REVIEW

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007); *see Ricci*

---

[3] The defendants may point to the absence of evidence in the record to discharge its burden on an issue for which the plaintiff has the burden of proof, in this case that plaintiff has no evidence that a Suffolk County custom or policy caused a violation of his constitutional rights.  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents ... [and] affidavits or declarations," Fed.R.Civ.P. 56(c)(1)(A), "which it believes demonstrate [s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may also meet its initial burden that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(B); *Hill v. Melvin,* No. 05 Civ. 6645, 2006 WL 1749520, at *4 (S.D.N.Y. June 27, 2006) ("The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof."); *Fuertado v. City of New York,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) ("The moving party may use a memorandum or brief to 'point to' the absence of evidence and thereby shift to the non-movant the obligation to come forward with admissible evidence supporting its claim.").

*v. DeStefano,* 557 U.S. 557 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)), "A fact is material if it might affect the outcome of the suit under governing law." *Ramos v. Baldor Specialty Foods, Inc.,* 687 F.3d 554, 558 (2d Cir.2012); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986) *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 104 (2d Cir.2011), *cert. denied,* 565 U.S.1260, 132 S.Ct. 1744, (2012). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig,* 632 F.3d 803, 812 (2d Cir.2011); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986) (holding that summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof).

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," *Spinelli v. City of New York,* 579 F.3d 160, 166 (2d Cir.2009) (internal quotations and citation omitted); *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."), to determine whether there is a genuine issue for trial. *See Ricci,* 557 U.S. 557, 129 S.Ct. at 2677. "An issue is 'genuine' if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Rojas,* 660 F.3d at 104 (quoting *Anderson,* 477 U.S. at 248); *see also Ramos,* 687 F.3d at 558. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci,* 557 U.S. 557, *see also Fabrikant v. French,* 691 F.3d 193, 205 (2d Cir.2012) ("There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." (quotations and citation omitted)); *Jeffreys,* 426 F.3d at 553 ("The judge must ask not whether the evidence unmistakably favors ones [sic] side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  s*ee also Taylor v. Ridley,* 904 F.Supp.2d 222(E.D.N.Y. 2012)

"The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Department,* 613 F.3d 336, 340 (2d Cir. 2010); *see also Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir.2011); *see also F.D.I.C. v. Great American Ins. Co.,* 607 F.3d 288, 292 (2d Cir.2010). Once the moving party meets its burden, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli,* 579 F.3d at 166; *see also Celotex Corp.,* 477 U.S. at 323. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut*

*v. State Univ. of N.Y.,* 352 F.3d 733, 743 (2d Cir.2003); *see also Lyons v. Lancer Ins. Co.,* 681 F.3d 50, 56–7 (2d Cir.2012); *Jeffreys,* 426 F.3d at 554. The nonmoving party cannot avoid summary judgment simply by asserting "some 'metaphysical doubt as to the material facts[,]' " *DeFabio v. East Hampton Union Free School District,* 623 F.3d 71, 81 (2d Cir. 2010) (quoting *Jeffreys,* 426 F.3d at 554); "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys,* 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio,* 623 F.3d at 81; and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton County, New York,* 541 F.3d 464, 471 (2d Cir.2008); *see also McCarthy,* 482 F.3d at 202.

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory * * * or based on speculation." *Major League Baseball v. Salvino,* 542 F.3d 290, at 310 (2d Cir. 2008); *Katel Ltd. Liability Co. v. AT & T Corp.,* 607 F.3d 60, 67 (2d Cir. 2010); *see also Brown v Eli Lilli,* 654 F.3d 347 at 358 (holding that the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## POINT I

### PLAINTIFF'S CLAIM AGAINST OFFICER PAV FOR FAILING TO INTERVENE MUST BE DISMISSED AS THERE IS NO EVIDENCE THAT OFFICER PAV OBSERVED OR HAD REASON TO KNOW THAT CHRISTOPHER MCCOY WOULD VIOLATE THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

As noted above, the complaint filed by the plaintiff appears to allege conduct against Officer Pav on a theory of failing to intervene in the unconstitutional conduct of Officer McCoy.   "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552 at 557 (2d Cir. 1994).   An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, *see O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988)*,* (2) that a citizen has been unjustifiably arrested, *see Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982); or (3) that any constitutional violation has been committed by a law enforcement official, *see O'Neill,* 839 F.2d at 11.  *Anderson* at 557 (2d Cir. 1994)  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. *See id.* at 11–12. Importantly, liability will only attach if the official "observes excessive force is being used or has reason to know that it will be [used]." *Valverde v. Folks,* No. 1:19-CV-08080-MKV, 2020 WL 5849515, at *7 (S.D.N.Y. Sept. 30, 2020).   Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a

reasonable jury could not possibly conclude otherwise.  *See id.; Theodat v. City of New York,* 818 F. App'x 79, 82 (2d Cir. 2020).

Simply stated, there is no evidence in the available record that would plausibly support the inference that Officer  Pav knew or had reason to know that Ms. Newkirk's was going to be subjected to a violation of her constitutional rights by McCoy.     Nor is there evidence that Officer Pav had a realistic opportunity to intervene in any conduct of which it is alleged he was aware.   *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21–22 (2d Cir. 2012).    The only evidence in the record of Pav's knowledge of McCoy's conduct is the plaintiff's unsupported claim that Officer Pav witnessed the actions of Officer McCoy at the scene of her arrest and "knew" that McCoy had groped her.   She also claims that Pav had knowledge, or that it was at least foreseeable that McCoy would later sexually assault her, and that he had an obligation to intervene.     However, but for the plaintiff's self- serving testimony, there is simply no evidence that Pav saw what she alleged happened at the scene.   And even accepting the plaintiff's version of the events, Officer Pav did not have a realistic opportunity to prevent McCoy's conduct at the scene. No can it be plausible or reasonably inferred that based upon the alleged acts committed by McCoy during the search at the scene, it was foreseeable that he would then engage in the far more  egregious assault at the precinct.

A close review of the plaintiff's deposition testimony reveals that her claim that Officer Pav witnessed the alleged abuse at the scene of her arrest is pure conjecture. Initially, as noted in the defendants' statement pursuant to Rule 56.1, the plaintiff presents three wholly inconsistent locations where she alleges that McCoy put his hands underneath her sweater and touched her breasts.   Her first description has the search and

touching occur at the back of the vehicle in which she was a passenger. (See ¶ 22-29 of Rule 56.1 statement). Then, within the same series of questioning, she changes the location to the area in front of the *front* passenger door of the police vehicle. (See ¶ 32-38 of Rule 56.1 statement). Her testimony on this location is clear an unequivocal, repeatedly describing the area as the "front end of the police car"; the "front passenger"; "right in front of" the front passenger side door of the police car; and the front passenger door of the police car. (See ¶ 34 of Rule 56.1 statement). Equally clear is the plaintiff's testimony that when McCoy put his hands under her shirt her back was toward the police vehicle. (See ¶ 36 of Rule 56.1 statement). This is significant because the plaintiff testified that at the time McCoy had his hands under her sweater she claims that Officer Pav was in the driver's seat of the police vehicle; a position in which no reasonable jury could conclude that he saw McCoy's actions.

However, plaintiff then changes her story again, and alleges that McCoy put his hands under her sweater when she was behind the open rear passenger door of the police vehicle, now conveniently positioned at an angle toward the front of the vehicle. (See ¶ 42-48 of Rule 56.1 statement). Plaintiff further claims that when McCoy touched her under the sweater he was in front of her (apparently between her and the open car door) and she was facing him. Importantly, Ms. Newkirk says that when McCoy was touching her breasts she was looking at McCoy. Further, she claims that it was only when her jacket was being zipped up that Pav heard and commented that she could be searched at the precinct. (See ¶ 42-51 of Rule 56.1 statement).

The defendants recognize that, notwithstanding the plaintiff's three entirely inconsistent versions of the alleged abuse at the scene, for the purposes of summary judgment the Court must view the facts most favorable to the plaintiff, and the plaintiff may choose whatever version she wishes for the Court to adopt.   However, regardless of the version adopted by the plaintiff, she fails to submit any admissible evidence that Officer Pav observed or was aware that McCoy put his hands under her sweater.   In one version she claims that when she was first being searched, but before McCoy put his hands under her sweater that Officer Pav was at the hood of either the vehicle she was in or the hood of the police vehicle.   (See ¶ 40 of Rule 56.1 statement)   In another version she says that when McCoy put his hands under her sweater, Officer Pav was putting her purse into the trunk and then got in the driver's seat of the car.   (See ¶ 39 of Rule 56.1 statement).    Another version has Officer Pav in the driver's seat when she claims McCoy put his hands under her sweater.  (See ¶ 49 of Rule 56.1 statement).

The defendants have submitted by way of the sworn testimony of Officer Pav that after producing a paper that the plaintiff believed was a warrant recall sheet (which is was not), McCoy brought the plaintiff to the back of the vehicle, and when that occurred Pav turned his attention away from the plaintiff and went back to the driver of the vehicle. (See ¶ 53-54 of Rule 56.1 statement).   He further testified that  when he was done speaking to the driver he went back to the police car and the plaintiff was in the backseat of the police car.  (See ¶ 55 of Rule 56.1 statement).   Pav testified that when he was at the scene he did not know if McCoy searched or frisked the plaintiff at the scene, that he did not observe McCoy place his hands on the plaintiff to search or frisk her, nor did he see the plaintiff grab the plaintiff's bra or abuse the plaintiff.   He did not have any

10

conversation with McCoy about a search at the scene and he did not hear the plaintiff protest to stop McCoy from touching her breasts.   (See ¶ 56-60 of Rule 56.1 statement). As such the defendants submit that we have established the absence of any genuine issue of material fact on whether Officer Pav observed or was aware that McCoy ever put his hands under the plaintiff's sweater and touched her breasts   *Zalaski v. City of Bridgeport Police Department,* 613 F.3d 336, 340 (2d Cir. 2010).   It is incumbent upon the plaintiff to provide more than conclusory allegations or unsubstantiated speculation to establish a material issue of fact sufficient to defeat summary judgment.   *Major League Baseball v. Salvino,* 542 F.3d 290, at 310 (2d Cir. 2008).

Here the plaintiff fails to do so.   The only evidence submitted by the plaintiff is here self-serving testimony that Pav "saw" McCoy abuse her.   However, even accepting the facts in a light most favorable to the plaintiff, her claims are wholly speculative and based on unsupported conclusions.    In the first two versions of the plaintiff's recitation of events, her back is to the police vehicle and Pav could not have seen McCoy do what she claims.    At the least, her claim that he indeed "see" what happened is pure speculation which no reasonable jury could even infer.    In her third version, she conveniently positions herself in a way that he back is no longer to the vehicle, but also says that Pav is in the driver's seat and that she is looking at McCoy when McCoy is touching her under her sweater.    She offers no evidence that Pav turned to look in her direction when she was being touched, nor can it be reasonably inferred that he did so based on the available admissible evidence.   Simply because Pav was present does not give rise to an  inference that he observed or had reason to know that McCoy was going to abuse the plaintiff at the scene.

11

Even if one were to accept that plaintiff has put forth more than a "scintilla" of evidence that Pav observed or was aware of McCoy's conduct, it cannot be said that he had a realistic opportunity to intervene to prevent the harm from occurring. *Anderson v. Branen,* at 557 (2d Cir. 1994).   Plaintiff's own testimony indicates that Pav only commented that she could be searched at the precinct *after* hearing her jacket being zipped up and *after* the conduct committed by McCoy.   Accordingly, no failure to intervene claim can lie against Pav for McCoy's conduct at the scene.

Plaintiff's claim that Pav failed to intervene at the precinct fares no better.   The evidence in the admissible record reveals that Pav was not present when McCoy abused the plaintiff in the precinct on either occasion (accepting plaintiff's version), and in fact he was either in the basement of the precinct or was in the back parking lot of the precinct meeting with the Narcotics team.   Plaintiff admits that she never made an outcry to Pav or anybody else while at the precinct, and Officer Rivera testified that the plaintiff appeared happy when she searched the plaintiff.   There was no reason for Pav or anybody else at the precinct to believe or be aware that McCoy would sexually abuse the plaintiff as he did.   Nor can it be plausible or reasonably inferred that based upon the alleged acts committed by McCoy during the search at the scene, it was foreseeable that he would then engage in the far more egregious sexual assault at the precinct.

Based on plaintiff's letter opposition to the defendants request to move for summary judgment it is anticipated that the plaintiff will argue that Officer Pav's backfilling of the plaintiff's prisoner activity log creates an inference that Officer Pav was a "tacit collaborator" or even a "direct participant" in the violation of the plaintiff's

12

civil rights.   Initially, even the plaintiff denies that Officer Pav directly participated in the abuse by McCoy and in fact admits that Pav was not even present.   Plaintiff's remaining contention that the fabrication of the entries in the prisoner activity log can lead to an inference of "tacit collaboration" are meritless.

Plaintiff cites to three cases to support her position: *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016); *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512–13 (S.D.N.Y. 2008); and *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). Plaintiff's reliance on these decisions is misplaced.   In all three cases, the failure to intervene analysis was based upon actual observations by the involved officers of the conduct of the main participant and a knowledge that the constitutional violation was occurring.   In the instant matter, it is undisputed that Pav was not present for the abuse committed by McCoy at the precinct, and the notations made to the prisoner activity log occurred after McCoy had abused the plaintiff.   At best the back-filling of the log creates an inference that Pav was aware, *after the fact*, that McCoy abused the plaintiff.   This also applies to the alleged comments Pav made to the plaintiff regarding "white chocolate."   According to the plaintiff the comment was made after the plaintiff made an inquiry of Pav if McCoy was married.   No reasonable jury could conclude that this statement gives rise to an inference that Pav had pre-event knowledge that McCoy was going to sexually abuse the plaintiff in the manner that he did.

To the extent that the plaintiff claims that Officer Pav's actions in backfilling the Prisoner Activity Log constitute a conspiracy to aid McCoy in covering his acts, such conduct is not actionable based upon the Intra-corporate conspiracy doctrine.  *Varricchio v. Cty. of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010).   Again, while the plaintiff

may argue that this is evidence of knowledge by Pav after the event, it is simply too speculative to infer that this conduct supports an allegation of pre-event knowledge on the part of Officer Pav.

## POINT II

### PLAINTIFF'S MONELL CLAIM AGAINST THE COUNTY MUST BE DISMISSED AS THERE IS NO COUNTY POLICY OR PROCEDURE THAT CAUSED THE ALLEGED VIOLATION OF HER CONSTITUTIONAL RIGHTS

In addition to the claims against Officer Pav the plaintiff has asserted a claim against the County of Suffolk pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).    The defendants respectfully submit that the plaintiff's Monell claim must be dismissed as there is no evidence that a policy or custom on the part of the County caused the alleged constitutional violations by the co-defendant Christopher McCoy, nor is there any evidence of a widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians, or that any  policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent the violations of constitutional rights.

As the Court is aware, a municipality cannot be vicariously liable under § 1983 for their employees' acts. *Monell v. Dept. of Social Services*, 436 U.S. at 694–95, 98 S.Ct. 2018.  Instead, municipalities are only liable under § 1983 for constitutional deprivations resulting from a governmental policy or custom. *Id*. at 694, 98 S.Ct. 2018. A plaintiff may demonstrate that such a policy or custom exists by introducing evidence of one of the following:

14

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Jones v. Westchester County*, 182 F.Supp.3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y. 2010).

Moreover, to prevail on a *Monell* claim, a plaintiff must show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation" he suffered. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 406–07, 117 S. Ct. 1382, 1389–90, 137 L. Ed. 2d 626 (1997). The Supreme Court has held that "quite apart from the state of mind required to establish the underlying constitutional violation…a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. *Bd. of Cty. Comm'rs of Bryan Cty Id.,* at 406, *citing City of Canton v. Harris*, 489 U.S. 378, at 388, 389.

There is no question that the term "deliberate indifference" is meant to encompass purposeful or reckless conduct, not mere negligence. *Jones v. Town of E. Haven*, 691

F.3d 72, 81 (2d Cir. 2012). In attempting to establish that a municipality's failure to supervise or discipline constituted deliberate indifference a plaintiff may show that "a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* Typically, that involves establishing a "pattern of similar constitutional violations" to the one alleged in the complaint. *See Connick v. Thompson*, 563 U.S. 51, at 62. A plaintiff may "show a sufficiently widespread practice among police officers of [unconstitutional] abuse of the rights of [civilians]." *See Jones*, 691 F.3d at 82. A plaintiff may also show that Department Officers were in some way predisposed to unconstitutional action against certain individuals and such predisposition was known, or should have been known, to the supervisory personnel who did not act to counter it. *Id.* Finally, a plaintiff may establish deliberate indifference by showing that supervisory personnel were inclined to violate constitutional rights and that inclination had been "communicated to line officers so as to give them the sense that they could engage in such abuse of rights without rising appropriate disciplinary consequences." *Id.* It is significant to note that in describing supervisory personnel the *Jones* Court was referring to policy makers. *See*, *Jones*, 691 F.3d at 81, fn 6.    If, however, a plaintiff offers no evidence of a pattern of unconstitutional conduct or a top-down custom, policy, or practice encouraging unconstitutional behavior, the municipality is not liable.

In the instant matter, the plaintiffs have failed to show a sufficiently widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians, or that any  policy making official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent the violations of

constitutional rights.    Based upon the plaintiff's opposition to the County's pre-motion letter, it is anticipated that the plaintiff may rely upon the opinion of their police procedures expert that there were deficiencies in the existing police department policies regarding the supervision of prisoners within the precinct; and that this failure to supervise or train resulted in the alleged individual constitutional violations.    However, the plaintiff has no proof that any claimed deficiencies were the result of deliberate indifference on the part of County policy makers to a known risk of constitutional violations.

To state a claim under § 1983 for failure to supervise or train employees, a plaintiff must allege that the defendants  conduct reflected "deliberate indifference to the rights of persons with whom the [employees] c[a]me into contact." *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 127–128 (2d Cir.2004).    As the Supreme Court has cautioned, "deliberate indifference" is " 'a stringent standard of fault,' " *Connick v. Thompson,* 131 S.Ct. at 1360 (quoting *Board of Cnty. Comm'rs v. Brown,* 520 U.S. at 410, 117 S.Ct. 1382), and necessarily depends on a careful assessment of the facts at issue in a particular case, *see generally Amnesty Am. v. Town of W. Hartford,* 361 F.3d at 128 (holding that deliberate indifference determination "need not rely on any particular factual showing"). The operative inquiry is whether those facts demonstrate that the policymaker's inaction was the result of "conscious choice" and not "mere negligence." *Id.* (internal quotation marks omitted); *see City of Canton v. Harris,* 489 U.S. at 389, 109 S.Ct. 1197.  "[A] city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current

17

practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *see also Board of Cnty. Comm'rs v. Brown,* 520 U.S. at 407, 117 S.Ct. 1382 (holding that deliberate indifference requires proof that "municipal actor disregarded a known or obvious consequence of his action" (internal quotation marks omitted)); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992) (framing deliberate indifference inquiry in three parts: (1) policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights (internal quotation marks omitted)).

However, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). As stated above, only where a plaintiff can demonstrate that a municipality's failure to train "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact" will a policy or custom actionable under Section 1983 be established. *Connick,* at 60; *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "[W]here ... a city has a training program, a plaintiff must ... 'identify a specific deficiency in the city's training program and establish that that deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation.' " *Wray v. City of New York*, 490 F.3d at 196 (quoting *Amnesty Am. v. Town*

*of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)). "The plaintiff must offer evidence to support the conclusion that the training program was inadequate, not '[t]hat a particular officer may be unsatisfactorily trained' or that 'an otherwise sound program has occasionally been negligently administered,' and that a 'hypothetically well-trained officer' would have avoided the constitutional violation." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440–41 (2d Cir. 2009) (quoting *Canton*, 489 U.S. at 390–91).

As noted above,  notwithstanding the anticipated reliance by the plaintiff on their "police procedures" expert , the plaintiff's will be unable to establish that and claimed deficiencies in the procedures regarding the supervision of prisoners within the precinct were the result of the deliberate indifference of policy makers.  Nor will the plaintiff be able to establish that the alleged deficiencies were the 'moving force' behind the constitutional violation.  ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.").  *Jones v. Town of E. Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012).    In order for municipal or official capacity liability to be imposed, there must be "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Nicholson v. Scoppetta*, 344 F.3d 154, 165 (2d Cir. 2003) (explaining that plaintiff must show that municipality is actually responsible for her injury).

As plaintiffs have failed to establish that the alleged constitutional injury was the result of a County policy, custom or procedure, summary judgment should be granted on the *Monell* claim against the County.

### False Arrest

The plaintiff was arrested on March 16, 2017 on the basis of validly issued bench warrants. Accordingly there was probable cause for her arrest and her § 1983 false arrest claim must fail. *Spagnuolo v. Howell,* 814 F. App'x 614, 616–17 (2d Cir. 2020) ("Probable cause is a complete defense to a constitutional or New York tort claim for false arrest and false imprisonment . . . ."); *see also*, *Smith v. Rossini, et al*. 19-cv-0323 (MKB)(SIL) (EDNY 2020)

### Denial of Medical Care

The claims against Officer Pav for denial of medical care are baseless as the plaintiff cannot establish she was experiencing a serious medical condition known to him (plaintiff alleges she told other officers that she was experiencing jaw pain related to her tooth). *See Farmer v. Brennan*, 511 U.S. 825, 832(1994). Moreover, Officer Pav was not personally involved in the events in which the plaintiff claims she was denied adequate medical care. It is well settled that "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under§ 1983." *Back v. Hastings on Hudson Union Free School Dist*., 365 F.3d 107, 122 (2d Cir. 2004); *see also Platt v. Incorporated Village of Southampton*, 391 Fed. Appx. 62,65 (2d Cir. Aug. 30, 2010).

**_Qualified Immunity_**

Officer Pav is also entitled to qualified immunity as it cannot be said that his conduct was objectively unreasonable or that the law was clearly established that his alleged conduct was unconstitutional. *Betts v. Shearman,* 751 F.3d 78 (2d. Cir. 2014)

Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir.2007), *Betts v. Shearman*, 751 F.3d 78 (2d. Cir. 2014) *citing*, *Jenkins v. City of New York*, 478 F.3d 76, at 88 (2d Cir. 2007); (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and citing *Anderson v. Criegton*, 483 U.S. 635, 641 (1987).   An [official's] determination is objectively reasonable if '[officials] of reasonable competence could disagree on whether the probable cause test was met." *Jenkins*, *supra* at 87.

As noted above, the plaintiff alleges that Officer Pav failed to intervene in McCoy's conduct at the scene of the stop, and that his alleged knowledge from having observed McCoy's conduct is sufficient to establish a claim of failure to intervene at the precinct.   As defendants have argued, there is no evidence to support knowledge on the part of Pav at the scene. However, *assuming arguendo*, that he was aware of McCoy's conduct, based  on plaintiff's version of events it was not objectively unreasonable for Pav to believe at the time he became aware (the sound of the zipper closing) that there was nothing for him to do to intervene.

Of greater significance, plaintiff claims that Pav's alleged knowledge of McCoy's conduct at the scene should have made it foreseeable to him that McCoy would then later

sexually abuse the plaintiff at the precinct.    That Pav did not reach this conclusion (that McCoy would sexually abuse the plaintiff at the precinct) is not objectionably unreasonable as it cannot be said that officers of reasonable competence would have reached a different conclusion.

Moreover, it cannot be said, that at under the specific facts of this case that Pav's conduct (not McCoy's) violated clearly established law.   The Supreme Court has instructed that "a clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015); *citing*,  *Reichle v. Howards*, 566 U.S. 658, 132 S.Ct. 2088, (2012)  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741, 131 S.Ct. 2074 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 (1986).

In *Mullinex*, the Court went on to state: "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *Mullinex* 308-309, *citing al– Kidd, supra,* at 742, 131 S.Ct. 2074.  The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, (2004) (*per curiam)*(quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, (2001).

In examining the conduct of  Officer Pav, who was not present when the plaintiff was sexually abused,  it cannot be said under the specific facts of this case, that the law

was clearly established that his failure to reach the conclusion that McCoy would sexually abuse the plaintiff constituted a constitutional violation, or that the constitutional question was beyond doubt.   Accordingly, he is entitled to qualified immunity.

**POINT III**

**PLAINTIFF'S PENDANT STATE CLAIMS MUST BE DISMISSED
FOR FAILING TO COMPLY WITH THE REQUIRMENTS
OF GEN. MUN. LAW § 50h**

Plaintiff's pendant State claims must also be dismissed as she failed to comply with the requirements of New York State General Municipal Law § 50h.  Under New York law, "a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas v. Ruffin*, 816 F.3d 214, 226–27 (2d Cir. 2016).   "The notice of claim must set forth, *inter alia*, the nature of the claim, and must be filed within ninety days of when the claim arises." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).    Plaintiff did not file a Notice of Claim in this matter and  accordingly her pendant State law claims must be dismissed.

To the extent that any of plaintiffs' New York State causes of action against the individual defendants survive a motion for summary, the County respectfully requests, in light of a lack of a viable federal claim that the Court decline jurisdiction over those claims. *Valdez v. City of New York*, 18 NY3d 69 (2011).

## **CONCLUSION**

Based upon the foregoing, the motion of the defendants County of Suffolk and Police Officer Mark Pav pursuant to Fed. R. Civ. P. Rule 56 for summary judgment dismissing the complaint should be granted.

Dated:  Hauppauge, New York       Yours, etc.
       February 11, 2021

                          DENNIS M. COHEN
                          SUFFOLK COUNTY ATTORNEY
                          Attorney for County Defendant
                          H. Lee Dennison Building
                          100 Veterans Memorial Hwy
                          P.O. Box 6100
                          Hauppauge, New York  11788

By:    *Brian C. Mitchell*
                          Brian C. Mitchell
                          Assistant County Attorney