UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**LATOYA NEWKIRK,**

                    Plaintiffs,

-against-                    17-cv-2960 (MKB)(PK)

**COUNTY OF SUFFOLK, CHRISTOPHER A.
MCCOY, in his official and individual capacities, and
MARK PAV, in his official and individual capacities,**

                    Defendants.

**COUNTY OF SUFFOLK AND MARK PAV'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION PURSUANT TO RULE 56**

Dated: Hauppauge, New York
       April 1, 2021

                    Respectfully submitted,

                    DENNIS M. COHEN
                    SUFFOLK COUNTY ATTORNEY
                    Attorney for Defendant
                    County of Suffolk
                    H. Lee Dennison Building
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, New York 11788

                    By:  Brian C. Mitchell
                          Assistant County Attorney

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

Improper Use of the Rule 56 Statement.................................................................................... 2

FACTS PLAINTIFF CLAIMS ARE IN DISPUTE ................................................................. 3

Claimed Officer Pav inconsistencies regarding the search at the scene ................................... 5

Claim that Officer Pav admitted he knew that McCoy left him the log to fill in ..................... 5

POINT I
THERE IS NO EVIDENCE THAT OFFICER PAV OBSERVED OR HAD
REASON TO KNOW THAT CHRISTOPHER MCCOY WOULD VIOLATE
THE PLAINTIFF'S CONSTITUTIONAL RIGHTS ............................................................... 6

POINT II
PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH THAT ANY SUFFOLK
COUNTY POLICY MAKER WAS DELIBERATELY INDIFFERENCE TO
THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF .................................................. 8

CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

*Anderson v. Branen*,
   17 F.3d 552 (2d Cir. 1994) .................................................................................................. 6

*Anderson v. Liberty Lobby,*
   477 U.S. 242, 106 S.Ct. 2505 ............................................................................................ 8

*Anilao v. Spota*,
   340 F. Supp. 3d 224 (E.D.N.Y. 2018) ............................................................................... 8

*Connick v. Thompson*,
   563 U.S. 51, 131 S.Ct. 1350 ......................................................................................... 9, 10

*Gagnon v. Ball*,
   696 F.2d 17 (2d Cir.1982) .................................................................................................. 6

*Hernandez v. United States*,
   939 F.3d 191 (2d Cir. 2019) ........................................................................................ 10, 11

*Jean-Laurent v. Wilkerson*,
   461 F. App'x 18 (2d Cir. 2012) .......................................................................................... 7

*Major League Baseball v. Salvino,*
   542 F.3d 290 (2d Cir. 2008) ............................................................................................... 7

*Ofudu v. Barr Labs., Inc.*,
   98 F. Supp. 2d 510 (S.D.N.Y. 2000) ................................................................................. 2

*O'Neill v. Krzeminski,*
   839 F.2d 9 (2d Cir.1988) .................................................................................................... 6

*Outlaw v. City of Hartford*,
   884 F.3d 351 (2d Cir. 2018) ............................................................................................... 9

*Rodriguez v. Schneider*,
   1999 WL 459813 (S.D.N.Y. 1999) .................................................................................... 1

*Theodat v. City of New York,*
   818 F. App'x 79 (2d Cir. 2020) .......................................................................................... 6

*United States v. Lumpkin,*
   192 F.3d 280 (2d Cir.1999) ................................................................................................ 5

*Walker v. City of New York*,
   974 F.2d 293 (2d Cir. 1992) ............................................................................................. 10

**PRELIMINARY STATEMENT**

The County of Suffolk, and Police Officer Mark Pav (County defendants)[1], defendants in this §1983 civil rights action, submit this memorandum of law in reply to the plaintiff's response to their motion for summary judgment dismissing the complaint ("the complaint") filed by plaintiff Latoya Newkirk.

As argued in our original moving papers, the plaintiff cannot recover upon her claims against any of the Suffolk County defendants. As noted below, a close analysis of the available record reveals no admissible evidence that would plausibly support the inference that Officer Pav knew or had reason to know that Ms. Newkirk's was going to be subjected to a violation of her constitutional rights by McCoy. Nor is there evidence that Officer Pav had a realistic opportunity to intervene in any conduct of which it is alleged he was aware. Additionally, Officer Pav is entitled to qualified immunity. The defendants respectfully submit, that even when viewing the facts in a light most favorable to the plaintiff, she has failed to establish a claim against Officer Pav that can withstand summary judgment.

Likewise, the defendants' respectfully submit that summary judgment is also appropriate on the *Monell* claim against the County. The evidence produced by the plaintiff in opposition to the defendants motion fails to establish that a policy or custom on the part of the County caused the alleged constitutional violations by the individual defendants, nor is there any evidence of a widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians, or that any policymaking

---

[1] This Office does not represent Co-defendant former Suffolk Police Officer Christopher McCoy.

1

official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent the violations of constitutional rights.

In opposition to the defendants' motion, the plaintiff relies upon what can only be described as wholly unsupported conjecture and speculation. Faced with facts that establish a basis for granting summary judgment to the defendants on all claims, the plaintiff engages in analyses that go far beyond what might be considered reasonable inferences, and instead enter the realm of the speculative and metaphysical. Similarly, plaintiff's citation to her police procedure expert's report to support her *Monell* claim is equally lacking in the concrete particulars necessary to overcome a motion for summary judgment.[2]

*Improper Use of the Rule 56 Statement*

Initially, the defendants submit that the plaintiff's use of their counter Rule 56 statement for the purpose of argument is wholly improper. Pursuant to Rule 56.1, statements and counter statements should contain factual assertions, with citation to the record; they are not argument. *Rodriguez v. Schneider*, 1999 WL 459813, at *1 (S.D.N.Y. 1999), aff'd, 56 F. App'x 27 (2d Cir. 2003). Statements that are purely conclusory, do not set forth specific facts, and are proffered without any evidentiary support, are improper. *Ofudu v. Barr Labs., Inc.*, 98 F. Supp. 2d 510, 512–13 (S.D.N.Y. 2000). In their counter Rule 56 statement, the plaintiff goes beyond stating factual assertions, and instead engages in recitation of what they consider to be their theory of argument, including completely speculative and conclusory assertions. The defendants

---

[2] Based upon the response to the County defendants' motion plaintiff appears to have abandoned any claims for false arrest or denial of medical care as they concede that the plaintiff was arrested pursuant to a valid arrest warrant and that Officer Pav was not personally involved in any alleged deprivation of medical care. Plaintiff has also conceded that she failed to comply with the requirements of New York Gen.Mun. Law § 50h and accordingly her pendant New York State Claims must be dismissed.

2

respectfully submit, this ancillary submission of argument should not be considered by the Court.

## FACTS PLAINTIFF CLAIMS ARE IN DISPUTE

In opposition to the defendants' statement of undisputed facts pursuant to FRCP 56.1, on several occasions the plaintiff claims a dispute in facts where none exists. An analysis of these particular instances is necessary and significant in that plaintiff bases a great deal of her argument that summary judgment is not appropriate on these purported disputed facts. In our original moving papers, the defendants established that, while the plaintiff only claims a single instance when defendant McCoy subjected her to an abusive search by putting his hands under her sweater at the scene of her stop, she testified to three different locations at the scene where she claims the abuse occurred. We further argued that regardless of the location, Officer Pav was not in a position to observe the abusive conduct, nor did he have an opportunity to intervene, even if he had observed the conduct. In her opposition, the plaintiff denies that her testimony on the several locations was inconsistent by claiming 1) the search started at the rear of Mr. Abiola's vehicle and she was moved to the front passenger door area of the police vehicle (See plaintiff's response to paragraph 42 of defendants Rule 56 statement) and 2) by claiming that there was no "evidence or testimony indicating that Ms. Newkirk was located behind the rear passenger door" (See plaintiff's response to paragraph 46 of defendants Rule 56 statement). The location of the plaintiff at the time McCoy subjected her to abuse is crucial because her own testimony reveals that Officer Pav could not have seen the abuse.

The defendants respectfully submit that based upon the plaintiff's response to our Rule 56 statement she has conceded that the abusive search occurred while she was by the front passenger door of the police vehicle, that her back was toward the police

3

vehicle, that McCoy was facing her, and that Officer Pav was in the drivers seat of the police vehicle. (See plaintiff's response to paragraphs 34 through 39, and paragraph 49 of defendants Rule 56 statement).   Plaintiff's own deposition testimony admits that in this location and position Officer Pav would not have been able to observe the abuse and he would have only been able to see her back. (See Exhibit A, Plaintiff Deposition Page 150 at Line 21-25).   Ironically, this admission occurs during her attempt to create her third location for the search – at an angle behind the rear passenger door- so that she can overcome her own testimony that Officer Pav could not have observed the conduct.

Importantly, the testimony given by the plaintiff that she was at an angle, and in a position where she claims Officer Pav could have seen the abuse from his position in the driver's seat, relates entirely to her claim that she was located *behind* the open *rear* passenger door and not with her back to the *front* passenger door.  ("Clear line to Officer Pav's vision"). This is a position that the plaintiff now denies ever being in.  Accordingly, she cannot argue that Office Pav observed her because she was at an angle, or that there was a "clear line" to his vision.   To overcome this fatal inconsistency, the plaintiff asserts there is no evidence that Ms. Newkirk was ever behind the rear passenger door. This is simply untrue and is unequivocally established through her own deposition testimony:

> Q That's fine. What you said to me is that if you sat down, your behind would come on the ground.
> **A Yes**.
> Q And your behind would come on the ground towards the back of the car, towards the back wheel.
> **A Yeah**.
> Q And so –
> **A I wasn't sitting in such a way that -- like, the door's right here, and if I just sit, I'm in the car. I wasn't sitting in that kind of way**.
> Q Okay. If you did fall and your behind came on the ground, you would be looking at the open –

4

    **A   Inside of the door.** *The open inside rear of the door***. Excuse me. I'm sorry.**
(See Exhibit A at Page 157 Line 17-25, Page 156 Line 1-10, emphasis added).

Plaintiff has conceded that the abusive search occurred while her back was to the police vehicle and Office Pav could not have seen what occurred.

*Claimed Officer Pav inconsistencies regarding the search at the scene*

  Plaintiff also alleges that there are inconsistencies in the record from Officer Pav regarding whether he observed a search of the plaintiff at the scene by citing to 302 memos created by the FBI of interviews with Officer Pav (see plaintiff's Exhibit 6, April 6, 2017 interview, and April 26 and 26 interview).   Initially, the defendants submit that the cited memorandum are hearsay and inadmissible, but even if considered, they establish no inconsistency.[3]   Each of the memos state unequivocally that Officer Pav did not witness McCoy search or conduct a pat down of Ms. Newkirk no did he observe any inappropriate behavior on the part of McCoy.

*Claim that Officer Pav admitted he knew that McCoy left him the log to fill in*

  Plaintiff bases her entire speculative argument that Officer Pav had prior knowledge of McCoy's conduct on an assertion that Officer Pav admitted that he contemporaneously knew a text he received from McCoy meant that McCoy left the Prisoner Activity Log for him to fill in.  (See plaintiff's response to paragraph 128 of defendants Rule 56 statement – referencing Officer Pav's deposition at Page 135). However, a complete reading of the cited testimony reveals that Officer Pav did not know

---

[3] The County defendants also submit that plaintiff's Exhibit 1 and 2, the Suffolk County Police Internal Affairs report and attachments  are inadmissible hearsay as well.   While certain reports may be admissible pursuant to F.R.E  803(8), the defendants respectfully disagree with the findings of the single investigator and his opinion is not representative of the County Defendants' view of the evidence, and accordingly we submit it lacks sufficient trustworthiness. Moreover, assessments of the credibility of witnesses is inadmissible due to the "danger that it will usurp the fundamental role of the juror as trier of fact." *See, e.g., United States v. Lumpkin,* 192 F.3d 280, 289 (2d Cir.1999).

5

*at the time* the reason for the text, and in fact his answer includes the words "Now I know." (See Exhibit 3, Pav deposition at page 135, Line 16-20).

The consideration of the above facts is of great significance as plaintiff's arguments seeking to overcome summary judgment rely heavily upon the erroneous representation that they are in dispute.

## POINT I

### THERE IS NO EVIDENCE THAT OFFICER PAV OBSERVED OR HAD REASON TO KNOW THAT CHRISTOPHER MCCOY WOULD VIOLATE THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

In her memorandum in opposition, the plaintiff acknowledges that to establish a claim for failure to intervene in this Circuit a plaintiff must show that an officer observes or has reason to know: (1) that excessive force is being used, *see O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988)*,* (2) that a citizen has been unjustifiably arrested, *see Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982); or (3) that any constitutional violation has been committed by a law enforcement official, *see O'Neill,* 839 F.2d at 11. *Anderson v. Branen*, 17 F.3d 552 at 557 (2d Cir. 1994).   Moreover, for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. *See id.* at 11–12.   Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. *See id.; Theodat v. City of New York,* 818 F. App'x 79, 82 (2d Cir. 2020).

As detailed above, the available undisputed facts in the record reveal that Officer Pav did not know, or have reason to know that McCoy subjected Ms. Newkirk to abuse at the scene of her stop, or that she would later be subjected to even more egregious abuse at the precinct.   Nor is there evidence that Officer Pav had a realistic opportunity to

6

intervene in any conduct of which it is alleged he was aware. *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 21–22 (2d Cir. 2012). Plaintiff bases her entire argument that Officer Pav failed to intervene at the scene of her stop on the wholly unsupported claim that Officer Pav witnessed the actions of Officer McCoy at the scene of her arrest and "knew" that McCoy had groped her. However, the available admissible evidence, which has been conceded by the plaintiff, shows that Officer Pav, could not have witnessed McCoy's abusive conduct, because her back was to him at the front passenger side of the police vehicle while he was seated in the driver's seat. Even if plaintiff's testimony could establish an inference that Office Pav was aware of the abuse, there simply is no evidence from which a reasonable jury could conclude that he could have realistically intervened.

Plaintiff then bootstraps her unsupported claim that Officer Pav observed the abuse at the scene to argue that it was foreseeable to Officer Pav that McCoy would sexually abuse her at the precinct. The only additional evidence the plaintiff can allude to is the equally unsupported suggestion that based on Officer Pav's claimed inconsistencies (which the defendants have noted do not exist) an inference may be drawn that McCoy actually advised Officer Pav that he was going to sexually abuse the plaintiff, and that as a result Officer Pav can be considered a "tacit collaborator." Lastly, based on a text sent by McCoy to Officer Pav, *after* the abuse occurred, the plaintiff claims Officer Pav had, prior knowledge of McCoy's intentions.

All of the above arguments are nothing more than conclusory assertions borne out of conjecture and speculation. "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory * * * or based on speculation." *Major League Baseball v. Salvino,* 542 F.3d

7

290, at 310 (2d Cir. 2008); and plaintiff's allegations are just that. Plaintiff has failed to set forth "concrete particulars" showing that a trial is needed, as they are required to do. *See Anderson v. Liberty Lobby*, 477 U.S. 242 at 247-50, 106 S.Ct. 2505. Although a plaintiff may rely on circumstantial evidence (and reasonable inferences drawn from such evidence), there is simply insufficient evidence in the record for a rational jury to reasonably infer that Officer Pav witnessed the abuse by McCoy at the scene and based solely on that observation it was foreseeable that McCoy would later engage in the far more egregious sexual assault at the precinct. *Anilao v. Spota*, 340 F. Supp. 3d 224, 250–51 (E.D.N.Y. 2018). As such, the defendants respectfully submit that summary judgment should be granted as to the claims against Officer Pav. Additionally, as it was not objectively unreasonable for Officer Pav to fail to conclude that McCoy would sexually abuse the plaintiff, he is entitled to qualified immunity.

## POINT II

**PLAINTIFF'S EVIDENCE FAILS TO ESTABLISH THAT ANY SUFFOLK COUNTY POLICY MAKER WAS DELIBERATELY INDIFFERENT TO THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF**

The only evidence that the plaintiff relies upon to overcome summary judgment on their *Monell* claim against the County is the report of their "police procedures" expert Edmund Hartnett. (See Plaintiff's Exhibit 11). The report of the expert presents nothing to establish that a policy or custom on the part of the County caused the alleged constitutional violations by the co-defendant Christopher McCoy, that there is any evidence of a widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians, or that any policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent the violations of constitutional rights. Like much of the plaintiff's

8

evidence, the report is rife with terms like "apparently" and "suspected" but thin on concrete particulars to establish conduct by County *policy makers* sufficient to establish a Monell claim.

As noted in our original moving papers, a municipality may be liable under § 1983 only if the plaintiff's injury was caused by "action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51 at 60-61, 131 S.Ct. 1350. In "limited circumstances," a municipality may also be held liable for its failure to train its employees. *Id.* However, to state a failure-to-train claim, a plaintiff must allege that "a municipality's failure to train its employees in a relevant respect ... amount[ed] to deliberate indifference to the rights of persons with whom the untrained employees come into contact." "Deliberate indifference is a stringent standard of fault." *Id.* A municipality is deliberately indifferent where it fails to act when it has "actual or constructive notice," generally from "[a] pattern of similar constitutional violations by untrained employees," that its training program is "deficient." A plaintiff, therefore, "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (internal quotations marks and alterations omitted). That "a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91, 109 S.Ct. 1197. Allegations that the injury could have been avoided with "better or more training" are not sufficient. *Id.* at 391, 109 S.Ct. 1197. Finally, a municipality may only be liable "where its policies are the moving force behind

9

the constitutional violation." *Connick*, 563 U.S. at 61, 131 S.Ct. 1350. *Hernandez v. United States*, 939 F.3d 191, 206–07 (2d Cir. 2019).

Moreover, there is no obligation on the part of municipal policy makers to train for those things that are obvious to all without training or supervision. *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992). In the instant matter the plaintiff alleges that she was sexual abused by McCoy while he was on duty in the police precinct. It is obvious to all that sexual abuse is abhorrent. The *Walker* court recognized that where the proper course of conduct is so obvious to all without training or supervision, then the failure to train or supervise is generally not "so likely" to produce a wrong decision as to support an inference of deliberate indifference by County policymakers to the need to train or supervise. *Walker*, supra at 300.

Plaintiff's expert report fails to identify a single County policy maker that was deliberately indifferent in training, supervising, or creating County police policy. In fact, the words "policy maker" and "deliberate indifference" can be found nowhere in the report. Rather the expert points to alleged lapses of supervision on the day of the event by persons who were not at the policy making level. He does not claim that any existing policies were unsound, or that any policy maker was aware of a widespread or pervasive practice among police officers to violate the rights of individuals. To the extent that he claims that policies could have been better, there is no evidence that any policy maker acted in a matter that was "deliberately indifferent" in failing to enact the purported "better" policy. Lastly, he offers nothing more than pure speculation that the policies in place at the time, the alleged failure to train or supervise, of the absence of the "better" policy" were the "moving force behind the constitutional violation." *Connick*, 563 U.S. at 61, 131 S.Ct. 1350   The "plaintiff must show a direct causal link between a municipal

policy or custom and the alleged constitutional deprivation." *Hernandez*, 939 F.3d at 206-207.   Since the plaintiff has failed to show that any County policy or custom was the cause of her alleged constitutional violation, her *Monell* claim against the County must be dismissed.

## CONCLUSION

Based upon the foregoing, the motion of the defendants County of Suffolk and Police Officer Mark Pav pursuant to Fed. R. Civ. P. Rule 56 for summary judgment dismissing the complaint should be granted.

Dated:  Hauppauge, New York  
       April 1, 2021

Yours, etc.  
DENNIS M. COHEN  
SUFFOLK COUNTY ATTORNEY  
Attorney for County Defendant  
H. Lee Dennison Building  
100 Veterans Memorial Hwy  
P.O. Box 6100  
Hauppauge, New York 11788

By:   *Brian C. Mitchell*  
      Brian C. Mitchell  
      Assistant County Attorney