UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X

LATOYA NEWKIRK,                                          17-CV-2960 (MKB)(PK)

                                        Plaintiff,       **LOCAL RULE 56.1
                                                         RESPONSE TO
           -against-                                     DEFENDANTS'
                                                         STATEMENT OF
COUNTY OF SUFFOLK, CHRISTOPHER A. MCCOY, in his          <u>MATERIAL FACTS</u>**
official and individual capacities, and MARK PAV, in his official
and individual capacities,

                                        Defendants.
------------------------------------------------------------------------------X

## PLAINTIFF'S RESPONSIVE STATEMENT TO DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS

Pursuant to the Federal Rules of Civil Procedure and Local Civil Rule 56.1, Plaintiff

LATOYA NEWKIRK hereby submits this Responsive Statement to Defendants COUNTY OF

SUFFOLK and MARK PAV's Rule 56.1 Statement of Material Facts:

1.     On May 16, 2017 the plaintiff filed the complaint in the instant matter. (DE 1).

**Response to Paragraph 1**

Not disputed.

2.     On March 16, 2017 at approximately 10:30 a.m. plaintiff was a passenger in a vehicle that was stopped by defendants Officer Mark Pav and Officer Christopher McCoy (See Exhibit A, Deposition transcript of plaintiff Latoya Newkirk dated October 8, 2019 at *70-71, *169).

**Response to Paragraph 2**

Not disputed.

3.     The person driving the vehicle in which the plaintiff was a passenger was a male named Larry Abiola.  (Exhibit A, Newkirk at *67-68).

**Response to Paragraph 3**

Not disputed, although Mr. Abiola's full name is Olanrewaju Abiola.  (Exhibit 1[1] at p. 4 & Exhibit 2 at p. 54).

4.     Officer Pav was driving the police vehicle that stopped the plaintiff.  (See Exhibit B, Deposition transcript of Mark Pav dated March 20, 2020 at *18).

**Response to Paragraph 4**

Not disputed.

5.     Prior to the stop Officer Pav had not seen the occupants of the vehicle.  (Exhibit B, Pav at *33).

**Response to Paragraph 5**

Disputed.  In his deposition, Defendant Pav failed to articulate a reason for the traffic stop (Exhibit 3 at p. 21-25) and could not even "recall what exactly brought our attention to that vehicle".  (*Id.* at 21).  No summons or ticket was written for the stop (*Id.*) and no "T-Stop data" was recorded for the stop.  (*Id.* at 25; Exhibit 1 at p. 10-11).  "T-Stop data" is required by the Suffolk County Police Department for all traffic stops and it requires entry of "the person you pulled over and the reason why you pulled them over and the disposition for it."  (Exhibit 3 at p. 23; Exhibit 1 at p. 11).  The failure of Defendants Pav and McCoy to articulate a reason for the stop, recall why the car was pulled over, and properly record the reason for and disposition of the stop creates a question of fact as to why the stop occurred and whether the Officers saw the occupants of the vehicle prior to the stop.

---

[1] Numbered Exhibits are attached to the Declaration of Brian T. Egan, Esq., counsel for the Plaintiff.  Lettered Exhibits are attached to the Declaration of Brian C. Mitchell, Assistant County Attorney.

6.     Officer Pav did not know if the occupants of the vehicle were male or female when he made the stop.  (Exhibit B, Pav at *33).

**Response to Paragraph 6**

Disputed for the reasons set forth in Response to Paragraph 5.

7.     Once stopping the vehicle, Officer Pav approached the driver's side and Officer McCoy approached the passenger side.  (Exhibit A, Newkirk at *105).

**Response to Paragraph 7**

Not disputed.

8.     Officer McCoy asked the plaintiff for identification and the plaintiff produced a benefits card.  (Exhibit A, Newkirk at *108).

**Response to Paragraph 8**

Not disputed.

9.     Officer McCoy ran the plaintiff's identification and returned to the vehicle and advised the plaintiff that she had warrants for her arrest.  (Exhibit A, Newkirk at *114).

**Response to Paragraph 9**

Not disputed that Officer McCoy returned to the vehicle and told plaintiff she had outstanding warrants.  Disputed that Officer McCoy ran the search on plaintiff on the police vehicle's computer system.  The transaction search results for the police vehicle's computer system indicate that Officer Pav ran the inquiry on Ms. Newkirk.  (Exhibit 1 at p. 4 & Exhibit 2 at p. 52).  Officer Pav testified that he could not recall who ran the search.  (Exhibit 3 at p. 45). Ms. Newkirk did not testify as to which officer ran her identification while in police vehicle.

10.     The plaintiff had warrants for her arrest.   (Exhibit E, Suffolk County Police Department Warrant paperwork).

3

**Response to Paragraph 10**

        Not disputed, although notably, the charges for which warrants were issued were ultimately dismissed.  (Exhibit 4).

    11.    The plaintiff retrieved some paper from her purse that she believed showed that she did not have warrants.  (Exhibit A, Newkirk at *114).

**Response to Paragraph 11**

        Not disputed.

    12.    Plaintiff showed McCoy the paperwork from her purse.  (Exhibit A, Newkirk at *116).

**Response to Paragraph 12**

        Not disputed.

    13.    When the plaintiff showed the paperwork to McCoy she did not know the exact location of Officer Pav.  (Exhibit A, Newkirk at *116-117).

**Response to Paragraph 13**

        Not disputed.

    14.    The plaintiff was then told by McCoy that the paperwork did not indicate that she had no warrants, that the system said she had warrants and she got out of the car.  (Exhibit A, Newkirk at *119).

**Response to Paragraph 14**

        Not disputed.

    15.    When she got out of the car Officer Pav reached into the car and took her bag.  She then told him he did not have permission to take her purse or go into the car.  (Exhibit A, Newkirk at *119).

**Response to Paragraph 15**

Not disputed.

16.     When Officer Pav reached into the car, the plaintiff's back was to the rear passenger door of Mr. Abiola's vehicle and McCoy was in front of her facing the car.  (Exhibit A, Newkirk at *120-121).

**Response to Paragraph 16**

Not disputed.

17.     Officer Pav put the purse on hood of Mr. Abiola's vehicle or the police vehicle and went through the bag.  (Exhibit A, Newkirk at 121).

**Response to Paragraph 17**

Not disputed.

18.     While Officer Pav was looking through her purse, McCoy put her in handcuffs because he didn't want her to stop Officer Pav from searching the purse.  (Exhibit A, Newkirk at *121).

**Response to Paragraph 18**

Not disputed.

19.     Plaintiff was handcuffed as soon as she started objecting to what Officer Pav was doing.  (Exhibit A, Newkirk at *123).

**Response to Paragraph 19**

Not disputed.

20.     While searching her purse Office Pav said you're going to the precinct so all your stuff has to go with you.  (Exhibit A, Newkirk at *122).

**Response to Paragraph 20**

Not disputed.

21.     When plaintiff was handcuffed she was up by the rear passenger door of Mr. Abiola's car.  (Exhibit A, Newkirk at *126).

**Response to Paragraph 21**

Not disputed.

22.     While Officer Pav was looking through the plaintiff's bag and after she had been handcuffed McCoy searched her.  (Exhibit A, Newkirk at *127).

**Response to Paragraph 22**

Not disputed, except to the extent that McCoy's action constituted a "search".  As detailed in the Response to Paragraph 39 and the Responses referencing it, McCoy's actions constituted a sexual assault under the guise of a search.

23.     When McCoy searched her she was still in the same spot by Mr. Abiola's car. (Exhibit A, Newkirk at *127).

**Response to Paragraph 23**

Not disputed that the search began by Mr. Abiola's car, but note that Ms. Newkirk was later moved toward the police vehicle and "searched" by the vehicle.  (Exhibit A, Newkirk at 128, 138-139).

24.     When the plaintiff was handcuffed and McCoy started to search her, Mr. Abiola's car was still at the scene.  (Exhibit A, Newkirk at *128-129).

**Response to Paragraph 24**

Not disputed.

25.     While the plaintiff was being searched Mr. Abiola drove away and the plaintiff remained in the same spot where Mr. Abiola's car had been.  (Exhibit A, Newkirk at *127-128).

**Response to Paragraph 25**

Not disputed that Mr. Abiola drove away at some point near the start of the search.  Disputed that there is any clear testimony that Ms. Newkirk remained in the same spot when Mr. Abiola drove away.  Ms. Newkirk testified that she was not sure of the exact moment that she was moved toward the police vehicle.  (Exhibit A, Newkirk at 128).  Defendant Pav initially testified that "[a]t that point I'm not exactly sure what transpires from that point. She's eventually brought back to the back of our vehicle."  (Exhibit 3 at p. 58).  But he then later testifies that after he spoke with Mr. Abiola and told him he could leave, he returned to the police vehicle and Ms. Newkirk was inside the police vehicle and handcuffed.  (Exhibit 3 at p. 63-64).

26.     Mr. Abiola left as McCoy was starting to do the search.  (Exhibit A, Newkirk at *130).

**Response to Paragraph 26**

Not disputed.

27.     As he started the search, McCoy told the plaintiff to lift and shake out her bra and the plaintiff replied she could not because she was in cuffs.  (Exhibit A, Newkirk at *131).

**Response to Paragraph 27**

Not disputed that McCoy told Ms. Newkirk to lift and shake out her bra and not disputed that she replied that she could not do so while in handcuffs.  Dispute that this was the earliest part of the search as McCoy had initially started the search by reaching into Ms. Newkirk's pockets.  (Exhibit A, Newkirk at 129 & 131).

28.     When plaintiff told McCoy she can't shake out her bra, McCoy said "I'll do it."  (Exhibit A, Newkirk at *132).

**Response to Paragraph 28**

Not disputed.

29.     When McCoy searched the plaintiff he checked her coat pockets and plaintiff remembers him going into her bra.  (Exhibit A, Newkirk at *129).

**Response to Paragraph 29**

          Not disputed.

30.     Mr. Abiola pulled off before McCoy touched the plaintiff under her bra.  (Exhibit A, Newkirk at *129).

**Response to Paragraph 30**

          Not disputed.

31.     McCoy was the only person that searched the plaintiff.  (Exhibit A, Newkirk at *129).

**Response to Paragraph 31**

          Not disputed as to the search that took place at the traffic stop, but disputed inasmuch as a search of Ms. Newkirk was conducted by Officer Delfina Rivera at the precinct later that day.  (Exhibit 5 at p. 41; Exhibit 1 at p. 6-7).

32.     Mr. Abiola could have still been at the scene when McCoy searched the plaintiff's bra.  (Exhibit A, Newkirk at *131).

**Response to Paragraph 32**

          Not disputed.

33.     Mr. Abiola drove away and did a u-turn and at that point Officer McCoy brought the plaintiff to an area by the front passenger door of the police car and it was at that location that he reached into her bra.  (Exhibit A, Newkirk at *139; *132-133; *142). [56.1 Statement includes footnote arguing that the cited testimony is inconsistent with plaintiff's earlier testimony].

**Response to Paragraph 33**

Not disputed that Officer McCoy brought the plaintiff to an area by the front passenger door of the police car and it was at that location that he reached into her bra. Defendants' contention that this testimony contradicts Ms. Newkirk's earlier testimony regarding the location of the search is meritless.  As noted in Responses to Paragraphs 25 and 27 above, Defendant McCoy had initially started the search by Mr. Abiola's car by reaching into Ms. Newkirk's pockets, and soon after, Ms. Newkirk was moved toward the police vehicle, where Defendant McCoy reached into Ms. Newkirk's bra.  (Exhibit A, Newkirk at 128, 129, 131, & 139).  As noted in Response to Paragraph 25, neither party is entirely clear on the precise timing of Mr. Abiola's exit relative to when Defendant McCoy moved Ms. Newkirk toward the police vehicle.

34.    Plaintiff described the area where she was brought and searched by Officer McCoy as the "front end of the police car"; the "front passenger"; "right in front of" the front passenger side door of the police car; the front passenger door of the police car.  (Exhibit A, Newkirk at *133-7, 133-9, 133-12, 133-14, 142-16).

**Response to Paragraph 34**

Not disputed.

35.    When McCoy reached into the plaintiff's bra he put his hands under her sweater from underneath and put his hands on her breasts.  (Exhibit A, Newkirk at 143).

**Response to Paragraph 35**

Not disputed.

36.    When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff's back was toward the police car.  (Exhibit A, Newkirk at *148).

**Response to Paragraph 36**

Not disputed.

37.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts, if the plaintiff leaned back her back would have come in contact with the police car. (Exhibit A, Newkirk at *149).

**Response to Paragraph 37**

Not disputed.

38.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts, he was facing plaintiff.  (Exhibit A, Newkirk at *149).

**Response to Paragraph 38**

Not disputed.

39.     When McCoy had the plaintiff at the front passenger side of the police car and reached into her bra and put his hands on her breasts Officer Pav had just thrown the plaintiff's purse into the trunk of the police vehicle and got into the driver's seat.  (Exhibit A, Newkirk at *139; *143).

**Response to Paragraph 39**

Not disputed that when McCoy initially reached into Ms. Newkirk's bra Officer Pav was throwing her purse into the trunk of the police vehicle and that Officer Pav then entered the vehicle and sat in the driver's seat.  (Exhibit A, Newkirk at *139; *143).  For the purpose of clarifying the timeline, it should be noted that Defendant McCoy had grabbed and held Ms. Newkirk's breasts "for a while" and that when Ms. Newkirk had jumped when Defendant McCoy had touched her nipples, Defendant Pav was in the driver's seat of the police vehicle. (Exhibit A, Newkirk at 143-144).

40.     Plaintiff does not remember where Officer Pav was when McCoy started searching her other than saying he was searching her purse on the hood of Mr. Abiola's vehicle or the police car. (Exhibit A Newkirk at *140).

**Response to Paragraph 40**

Not disputed that at the time of the initial search, which was when Defendant McCoy had reached into Ms. Newkirk's pockets by Mr. Abiola's car, Defendant Pav was either searching Ms. Newkirk's purse on the hood of the police vehicle or on Mr. Abiola's car. (Exhibit A, Newkirk at 140-141).  Soon after, Ms. Newkirk was moved toward the police vehicle, where Defendant McCoy reached into Ms. Newkirk's bra.  (Exhibit A, Newkirk at 128, 129, 131, & 139).  When McCoy initially reached into Ms. Newkirk's bra, Officer Pav was throwing her purse into the trunk of the police vehicle and Officer Pav then entered the vehicle and sat in the driver's seat.  (Exhibit A, Newkirk at *139; *143).  Defendant McCoy had grabbed and held Ms. Newkirk's breasts "for a while" and when Ms. Newkirk had jumped after Defendant McCoy had touched her nipples, Defendant Pav was in the driver's seat of the police vehicle.  (Exhibit A, Newkirk at 143-144).

41.   When Officer Pav put the plaintiff's purse into the trunk of the police car the plaintiff was on the passenger side of the police car. (Exhibit A Newkirk at *144).

**Response to Paragraph 41**

Not disputed.

42.   When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts she was closer to the back passenger side of the police vehicle. (Exhibit A Newkirk at *150-151). [56.1 Statement includes footnote arguing that the cited testimony is inconsistent with plaintiff's earlier testimony].

**Response to Paragraph 42**

Dispute that Ms. Newkirk offered inconsistent testimony as to her location when Defendant McCoy put his hands on her breasts and note that the statement in this paragraph is unclear and a disingenuous attempt to manufacture an inconsistency.  Ms. Newkirk testified that Defendant McCoy had initially started the search by Mr. Abiola's car by reaching into her

11

pockets, and soon after, she was moved toward the front passenger door area of the police vehicle, where Defendant McCoy reached into her bra.  (Exhibit A, Newkirk at 128, 129, 131, & 139).  When later asked about her precise location at the time of this search, Ms. Newkirk made clear that she "wasn't directly next to the passenger seat" and that "it was a clear line to Officer Pav's vision".  (Exhibit A, Newkirk at 150, 149 & 151).  The front and rear doors on a vehicle are directly adjacent to each other and Ms. Newkirk was simply clarifying the position and location of the search by the passenger side of the police vehicle.  (*Id.*)

43.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was facing away from the police car at an angle. (Exhibit A Newkirk at *153).

**Response to Paragraph 43**

Not disputed.

44.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was facing at an angle toward the front of the police car. (Exhibit A Newkirk at *154).

**Response to Paragraph 44**

Not disputed.

45.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was standing at a 45 degree angle with her back toward the rear of the police vehicle. (Exhibit A Newkirk at *157-158).

**Response to Paragraph 45**

Not disputed.

46.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts the plaintiff was located behind the open rear passenger door of the police vehicle. (Exhibit A Newkirk at *158).

**Response to Paragraph 46**

            Dispute that there is any evidence or testimony indicating that Ms. Newkirk was located behind the rear passenger door.  (Exhibit A Newkirk at *158).

47.     When McCoy put his hands under the plaintiff's sweater and put his hands on her breasts he was in a position where he was able to put his hands under her sweater from in front of her. (Exhibit A Newkirk at *159).

**Response to Paragraph 47**

            Not disputed.

48.     When plaintiff was behind the open rear passenger door of the police vehicle and McCoy put his hands under the plaintiff's sweater and put his hands on her breasts, the plaintiff was looking at McCoy. (Exhibit A Newkirk at *159).

**Response to Paragraph 48**

            Not disputed that McCoy put his hands under the plaintiff's sweater and on her breasts, while Ms. Newkirk was looking at McCoy, but dispute that there is any evidence that it occurred behind the rear passenger door.

49.     When the plaintiff was behind the open rear passenger door of the police vehicle and McCoy put his hands under the plaintiff's sweater Officer Pav was in the driver's seat of the police vehicle. (Exhibit A Newkirk at *159)

**Response to Paragraph 49**

            Not disputed that Officer Pav was in the driver's seat of the police vehicle at this time but dispute that the sexual assault necessarily occurred behind the open rear passenger door. (Exhibit A, Newkirk at 159).

50.     After McCoy put his hand under the plaintiff's sweater he zipped the plaintiff's jacket back up. (Exhibit A Newkirk at *160).

**Response to Paragraph 50**

        Not disputed.

    51.    Plaintiff believes Officer Pav heard the sound of the jacket zipping and said "we can search her at the precinct." (Exhibit A Newkirk at *160).

**Response to Paragraph 51**

        Not disputed.

    52.    After the plaintiff had produced the paper that she believed was a warrant recall sheet McCoy brought her to the back of the vehicle. (Exhibit B, Pav at * 59).

**Response to Paragraph 52**

        Not disputed, except to note that the vehicle in question was Mr. Abiola's vehicle where the search initially began.

    53.    At the point in time when McCoy brought the plaintiff to the back of the car Officer Pav had not seen a frisk or search of the plaintiff. (Exhibit B, Pav at * 61).

**Response to Paragraph 53**

        Dispute that Pav had not seen a frisk or search of Plaintiff.  Pav's testimony on what transpired after Ms. Newkirk showed her documents to Defendant McCoy and was asked to exit Mr. Abiola's vehicle is inconsistent.  And he offered a different version of events to the FBI. Pav initially testified that "[a]t that point I'm not exactly sure what transpires from that point. She's eventually brought back to the back of our vehicle."  (Exhibit 3 at p. 58).  When asked again about what occurred "before [McCoy] eventually brought [Ms. Newkirk] to the back of the car" he confirms "I don't recall exactly what was going on." (*Id.* at 59).  Yet, just two questions later, when asked if "[McCoy] put her in handcuffs yet" he responded "no" and when asked whether anybody had frisked or searched her, he testified nobody had done so.  (*Id.* at 59; see

also *Id.* at 61).   Later in the deposition, Defendant Pav testifies that at the time of the incident he

did not know whether Ms. Newkirk had been frisked or searched:

> Q: Just so I understand, you don't know at this point, meaning when you go back
> to the car, whether she was actually frisked?
> A: Correct.
> Q: Or searched?
> A: Correct.

(*Id.* at 65).   In this version of events, he returned to the police vehicle after speaking to Mr.

Abiola, and Ms. Newkirk was already inside the police vehicle and handcuffed.   (Exhibit 3 at p.

63-64).

Pav's testimony is inconsistent on what he saw after Ms. Newkirk exits Mr.

Abiola's vehicle.   He offers two versions: one where he can't recall what occurred from the point

when Ms. Newkirk showed her papers to when she is inside the police car and another version

where he observed McCoy and Newkirk on his way back to Mr. Abiola, did not see Ms. Newkirk

placed in cuffs or searched, and then saw Ms. Newkirk in the back of the vehicle when returning

from speaking to Mr. Abiola.   When interviewed by FBI, he said he had witnessed Ms. Newkirk

being cuffed on the hood of the police car and placed in the back seat of the police vehicle.

(Exhibit 6 at 15-16).

At best, Defendant Pav cannot remember what occurred after Ms. Newkirk is

moved out of the vehicle.   At worst, his latest versions are an attempt to remove him from

observation of the search and arrest of Ms. Newkirk.   Defendant Pav's failure to recall what

occurred is not evidence that he never witnessed the search and frisk of Ms. Newkirk.

In contrast, Ms. Newkirk testified that during the search by the police vehicle, Pav

was in the driver's seat and "it was a clear line to Officer Pav's vision".   (Exhibit A, Newkirk at

150, 149 & 151).   Ms. Newkirk also testified that immediately after the search and sexual assault

by the police vehicle ended, Defendant McCoy zipped her jacket and Defendant Pav then responded "we could search her at the precinct. Come on."  (Exhibit A, Newkirk at 160).

54.    When McCoy took the plaintiff to the back of the vehicle Officer Pav turned his attention away from the plaintiff and went back to the driver of the vehicle. (Exhibit B, Pav at * 61).

**Response to Paragraph 54**

Dispute this paragraph for the same reasons set forth in Response to paragraph 53. Pav's testimony does not establish that he turned his attention away from the plaintiff as an undisputed fact.

55.    When done speaking to the driver of the vehicle Officer Pav went back to the police car and Newkirk was in the backseat of the police car. (Exhibit B, Pav at * 61).

**Response to Paragraph 55**

Dispute this paragraph for the same reasons set forth in Responses to paragraphs 53 and 54.  Further, Ms. Newkirk's testimony and Defendant Pav's statements to the FBI directly contradict the version of events set forth in this paragraph, which conveniently places Defendant Pav in a position to completely overlook how Ms. Newkirk's pocketbook ended up with the Defendant officers, and how Ms. Newkirk was cuffed, searched, and sexually assaulted at the traffic stop.

First, this paragraph directly contradicts Defendant Pav's statements to the FBI. Pav told the FBI that McCoy had handcuffed Newkirk on the hood of the police vehicle and had walked Ms. Newkirk to the back of the police vehicle and "then placed [her] inside the backseat of the SCPD vehicle."  (Exhibit 6 at 15-16).  Defendant Pav told the FBI that he put Ms. Newkirk's purse in the trunk of the police vehicle.  (Exhibit 6 at p. 16).  This Paragraph alleges that Pav could not have witnessed either of these events since Ms. Newkirk was already in the police vehicle when he turned around to return to the police vehicle.

16

As noted in the previous paragraphs, Ms. Newkirk provided the following timeline of events, which also contradicts the allegations in this paragraph. When McCoy began his search by Mr. Abiola's car, Defendant Pav was either searching Ms. Newkirk's purse on the hood of the police vehicle or on Mr. Abiola's car. (Exhibit A, Newkirk at 140-141). Soon after, Ms. Newkirk was moved toward the police vehicle, where Defendant McCoy reached into Ms. Newkirk's bra. (Exhibit A, Newkirk at 128, 129, 131, & 139). When McCoy initially reached into Ms. Newkirk's bra, Officer Pav was throwing her purse into the trunk of the police vehicle and Defendant Pav then entered the vehicle and sat in the driver's seat. (Exhibit A, Newkirk at 139; 143). Defendant McCoy had grabbed and held Ms. Newkirk's breasts "for a while" and when Ms. Newkirk had jumped after Defendant McCoy had touched her nipples, Defendant Pav was in the driver's seat of the police vehicle. (Exhibit A, Newkirk at 143-144).

56.     Officer Pav does not know if McCoy searched or frisked the plaintiff at the scene of the stop. (Exhibit B, Pav at * 64)

**Response to Paragraph 55**

Dispute this paragraph for the same reasons set forth in Responses to paragraphs 53, 54, and 55.

57.     Officer Pav did not have any conversation with McCoy about any frisk or search. (Exhibit B, Pav at * 64-65)

**Response to Paragraph 57**

Dispute this paragraph for the same reasons set forth in Responses to paragraphs 53, 54, and 55. Ms. Newkirk testified that immediately after the search and sexual assault by the police vehicle ended, Defendant McCoy zipped her jacket and Defendant Pav then responded "we could search her at the precinct. Come on." (Exhibit A, Newkirk at 160).

58.     Officer Pav did not see McCoy place his hands on the plaintiff to frisk or search her. (Exhibit B, Pav at * 71).

**Response to Paragraph 58**

Dispute this paragraph for the same reasons set forth in Responses to paragraphs 53, 54, and 55.

59.     Officer Pav did not see McCoy grab the plaintiff's bra on the side of the road. (Exhibit B, Pav at * 72).

**Response to Paragraph 59**

Dispute this paragraph for the same reasons set forth in Responses to paragraphs 53, 54, and 55.

60.     Officer Pav did not hear the plaintiff protest to stop touching her breasts. (Exhibit B, Pav at * 72).

**Response to Paragraph 60**

Dispute this paragraph for the same reasons set forth in Responses to paragraphs 53, 54, and 55.

61.     Plaintiff has no evidence that Officer Pav ever witnessed or was aware at anytime on March 16, 2017 that McCoy had searched, frisked or touched the plaintiff in an inappropriate manner at the scene of the vehicle stop. [original 56.1 statement includes footnote with legal argument and case citations]

**Response to Paragraph 61**

Dispute this paragraph and accompanying footnote for the same reasons set forth in Responses to paragraphs 53, 54, and 55.  The inconsistencies in Defendant Pav's testimony and in his statements to the FBI combined with Plaintiff's testimony that she was sexually

assaulted by Defendant McCoy while Defendant Pav was present, in their line of sight, within a few feet, provides evidence that Pav witnessed and/or was aware of what occurred.

Defendants' citation to a series of cases involving the absence of evidence in a record is inapposite to this case where the circumstantial evidence supports denial of Defendants' Motion.  A plaintiff may support her civil rights claim with circumstantial evidence.  *Vesterhalt v. City of New York*, 667 F.Supp.2d 292, 297-298 (S.D.N.Y. 2009) (denying defendant's motion for summary judgment despite plaintiff not being able to identify which officer used excessive force since "all of the individual defendants were present either inside the apartment or directly outside the door [and] [t]herefore, it is possible that all of the officers saw what happened to [plaintiff] when the door was thrown open and she was thrown to the ground, but failed to intervene on her behalf."); *Gonzalez v. Waterbury Police Dept.*, 199 F.Supp.3d 616, 621-623 (D. Conn. 2016) (circumstantial evidence may be used to support direct participation or failure to intervene theories).  Further, inconsistent or implausible testimony from a defendant officer can itself be persuasive circumstantial evidence of a civil rights violation.  *See, e.g., Medina v. Donaldson*, 2014 WL 1010951 at *8-9 (E.D.N.Y. March 14, 2014) (denying judgment as a matter of law and holding that "the jury may have inferred that Defendant was involved in the use of excessive force based on particular inconsistencies in his testimony.").

62.      After being placed in the police vehicle the plaintiff was taken directly from the scene to the Suffolk County First Precinct. (Exhibit A Newkirk at *162).

**Response to Paragraph 62**

Not disputed.

63.      On the way to the police station the plaintiff started having an anxiety attack and asked to have the window rolled down, which the officers did. (Exhibit A Newkirk at *162)

19

**Response to Paragraph 63**

        Not disputed.


       64.    On the way to the police station the plaintiff made inquiry about the marijuana and paraphernalia charges. (Exhibit A Newkirk at *163)

**Response to Paragraph 64**

        Not disputed.


       65.    Other than the discussion of marijuana charges Officer Pav and McCoy did not talk about anything relating to the plaintiff. (Exhibit A Newkirk at *165)

**Response to Paragraph 65**

        Not disputed.


       66.    Plaintiff arrived at the precinct around 11:00 a.m. (Exhibit A Newkirk at *170).

**Response to Paragraph 66**

        Not disputed.


       67.    Upon entering the precinct the plaintiff was asked questions by an officer at a window. (Exhibit A Newkirk at *166).

**Response to Paragraph 67**

        Not disputed.


       68.    Plaintiff was brought into a holding room and handcuffed to a table. (Exhibit A Newkirk at *170).

**Response to Paragraph 68**

        Not disputed.


       69.    Plaintiff was searched in the mugshot area of holding room by Officer McCoy. (Exhibit A Newkirk at *173).

**Response to Paragraph 69**

        Not disputed.

      70.    When searching the plaintiff McCoy put his hands up her shirt and on her legs. (Exhibit A Newkirk at *173).

**Response to Paragraph 70**

        Not disputed, although Ms. Newkirk made clear in her testimony that the search

in the mugshot was a continuation of the sexual assault at the traffic stop:

> He -- he did the same thing he did on the street. He put his hands up my shirt. He told me that it was because I liked it or he thinks I like it. He touched my legs with his hands. I had on leggings. There was no reason to search me there. I - - he just -- he put his hand up my leg on the inside.

(Exhibit A, Newkirk at 173).

      71.    Plaintiff did not know where Officer Pav was when McCoy searched her. (Exhibit A Newkirk at *173).

**Response to Paragraph 71**

        Not disputed as to the sexual assault in the mug shot area.

      72.    There were no other police officers in the holding room when McCoy searched the plaintiff. (Exhibit A Newkirk at *175).

**Response to Paragraph 72**

        Not disputed.

      73.    Officer Pav was not in the room when McCoy searched the plaintiff. (Exhibit A Newkirk at *176-177).

**Response to Paragraph 73**

        Not disputed.

74.     Plaintiff was brought to an interrogation room known as the Juvenile Squad Room. (Exhibit A Newkirk at *178).

**Response to Paragraph 74**

Not disputed.

75.     Plaintiff was brought to the Juvenile Squad Room twice. (Exhibit A Newkirk at *186).

**Response to Paragraph 75**

Not disputed.

76.     Plaintiff has a hard time telling one visit to the Juvenile Squad Room from the other. (Exhibit A Newkirk at *186-187).

**Response to Paragraph 76**

Dispute that Ms. Newkirk has a hard time distinguishing each visit and note that the context of this statement shows that Ms. Newkirk was speaking only of that particular moment in the deposition.  Ms. Newkirk ultimately answered every question regarding her visits to the Juvenile Squad Room.

77.     Plaintiff does not recall if Officer Pav was present the first time she was brought to the Juvenile Squad Room. (Exhibit A Newkirk at *187. * 190).

**Response to Paragraph 77**

Not disputed that Ms. Newkirk does not recall if Defendant Pav was present when she was brought to the Juvenile Squad Room but note that she testified that Pav was, for at least a short time, in the Juvenile Squad Room during the first visit to the room.  (Exhibit A, Newkirk at 202).

78.     When the plaintiff was brought to the Juvenile Squad Room for the first time she did not know why she was being brought there. (Exhibit A Newkirk at *190).

**Response to Paragraph 78**

        Not disputed.

79.    When the plaintiff was in the Juvenile Squad Room for the first time, McCoy asked her she had any information about where to buy drugs or who might be selling drugs. (Exhibit A Newkirk at *191-192).

**Response to Paragraph 79**

        Not disputed.

80.    When plaintiff was in the Juvenile Squad Room she was abused by McCoy. (Exhibit A Newkirk at *198).

**Response to Paragraph 80**

        Not disputed.  Specifically, McCoy sexually abused Ms. Newkirk by forcing Ms.

Newkirk to touch his penis and perform oral sex on him.  (Exhibit A, Newkirk at 204-208).

81.    When McCoy abused the plaintiff Pav was not present in the room. (Exhibit A Newkirk at *200).

**Response to Paragraph 81**

        Not disputed.

82.    Officer Pav was in the Juvenile Squad Room for a brief period of time before McCoy abused her. (Exhibit A Newkirk at *203).

**Response to Paragraph 82**

        Not disputed.

83.    Officer Pav left the Juvenile Squad Room before McCoy abused the plaintiff. (Exhibit A Newkirk at *204).

**Response to Paragraph 83**

        Not disputed.

84.     McCoy abused the plaintiff on two occasions and it happened very similar on both occasions. (Exhibit A Newkirk at * 206).

**Response to Paragraph 84**

        Not disputed.


85.     McCoy stopped abusing the plaintiff when there was a noise outside the door. (Exhibit A Newkirk at *207).

**Response to Paragraph 85**

        Not disputed, but note that this was during the first sexual assault in the Juvenile

Squad Room.  (Exhibit A, Newkirk at *207).



86.     McCoy brought the plaintiff back to the holding room. (Exhibit A Newkirk at *209).

**Response to Paragraph 86**

        Not disputed.


87.     When McCoy brought the plaintiff back to the holding room Officer Pav was not with them. (Exhibit A Newkirk at *209).

**Response to Paragraph 87**

        Not disputed.


88.     Plaintiff was brought back to the Juvenile Squad Room at around 2:00 p.m. (Exhibit A Newkirk at *210).

**Response to Paragraph 88**

        Not disputed.


89.     The second time the plaintiff was brought to the Juvenile Squad Room she was taken out of the room to be searched by a female officer. (Exhibit A Newkirk at *211-214).

**Response to Paragraph 89**

Not disputed.

90.     When the plaintiff was taken from the Juvenile Squad Room to be searched by the female officer Police Officer Pav was not there. (Exhibit A Newkirk at *214).

**Response to Paragraph 90**

Disputed.  Ms. Newkirk testified that Defendant Pav was there when a female officer took her from the Juvenile Squad Room to be searched.  (Exhibit A, Newkirk at 214). Officer Delfina Rivera testified that she was called back to the precinct to conduct a female search (Exhibit 5 at p. 11) and that when she arrived at the precinct, Officer Pav exited the Juvenile Squad Room and told her that Ms. Newkirk was inside ready to be searched.  (Exhibit 5 at p. 31-32).  Ms. Rivera said the same when interviewed by the FBI.  (Exhibit 6 at p. 39).

91.     Plaintiff was searched by the female officer in the cells across from the Juvenile Squad Room. (Exhibit A Newkirk at *214).

**Response to Paragraph 91**

Not disputed.

92.     When the female officer searched the plaintiff the plaintiff did not say anything to the female officer about what McCoy had done to her up to that point in time. (Exhibit A Newkirk at *215).

**Response to Paragraph 92**

Not disputed.

93.     The search by the female officer took five minutes. (Exhibit A Newkirk at *215).

**Response to Paragraph 93**

Not disputed.

94.     The female officer that searched the plaintiff was Police Officer Delfina Rivera. (Exhibit D, deposition testimony of Delfina Rivera dated March 11, 2020 at *38-39)

**Response to Paragraph 94**

   Not disputed.


94.  The female officer that searched the plaintiff was Police Officer Delfina Rivera. (Exhibit D, deposition testimony of Delfina Rivera dated March 11, 2020 at *38-39)

**Response to Paragraph 94**

   Not disputed.


95.  When Officer Rivera first observed the plaintiff in the Juvenile Squad Room the plaintiff was happy and smiling. (Exhibit D, Rivera at *38-39, 59-60).

**Response to Paragraph 95**

   Not disputed that Officer Rivera testified that Ms. Newkirk was happy and smiling, but note that the paragraph fails to provide context to Ms. Rivera's description.  When asked to "describe how you mean by happy" Officer Rivera responded "[s]he wasn't arguing, fighting." (Exhibit 5 at p.38).  In her interview with the FBI, Officer Rivera's description of Ms. Newkirk's demeanor as happy "was based on Rivera's interaction with other arrestees."  (Exhibit 6 at p. 40). The FBI investigators further noted that Rivera had stated that "[i]n contrast, the female Rivera had searched previously for McCoy and Pav required Rivera to enlist the assistance of another female officer due to the female's lack of cooperation; the female was yelling and making derogatory comments to officers."  (*Id.*)


96.  When Officer Rivera searched the plaintiff in the cellblock the plaintiff was happy. (Exhibit D, Rivera at *38-39, 59-60).

**Response to Paragraph 96**

   Dispute the emotional characterization for the same reasons set forth in the Response to Paragraph 95.

97.     When Officer Rivera searched the plaintiff she did not have any reason to believe that the plaintiff was in distress. (Exhibit D, Rivera at *60-61).

**Response to Paragraph 97**

Given her description of what she considers "happy" behavior as detailed in Response to Paragraph 95, dispute that Officer Rivera's testimony as to whether Ms. Newkirk was in distress leaves no question of fact.

98.     When Officer Rivera searched the plaintiff she did not have any reason to believe that the plaintiff may have been abused at that point. (Exhibit D, Rivera at *61)

**Response to Paragraph 98**

Disputed for the same reasons set forth in Response to Paragraph 97.

99.     When Officer Rivera searched the plaintiff she did not have any reason to believe that the plaintiff may have been afraid at that point. (Exhibit D, Rivera at *61).

**Response to Paragraph 99**

Disputed for the same reasons set forth in Response to Paragraph 97.

100.    After the search, the female officer brought the plaintiff back to the Juvenile Squad Room. (Exhibit A Newkirk at *215).

**Response to Paragraph 100**

Not disputed.

101.    McCoy was in the Juvenile Squad Room when the female officer brought the plaintiff back to the Juvenile Squad Room. (Exhibit A Newkirk at *216)

**Response to Paragraph 101**

Not disputed.

102.    The plaintiff does not recall if Officer Pav was present in the Juvenile Squad Room when the female officer brought her back. (Exhibit A Newkirk at *216).

**Response to Paragraph 102**

Not disputed.

103.    Officer Pav left the Juvenile Squad Room at 2:00 p.m. right after the plaintiff was searched. (Exhibit A Newkirk at *217).

**Response to Paragraph 103**

Not disputed.

104.    At a point in time after Officer Pav left the Juvenile Squad Room Officer McCoy abused the plaintiff. (Exhibit A Newkirk at *218).

**Response to Paragraph 104**

Not disputed.   Specifically, Defendant McCoy attempted to pull down Ms. Newkirk's waistband, and then pulled Ms. Newkirk's head down to his penis and forced her to perform oral sex on him.  (Exhibit A, Newkirk at 221-224).  Defendant McCoy pulled her face down with enough force to hurt her jaw.  (*Id.* at 222). When Ms. Newkirk resisted, Defendant McCoy told her "don't make it hard."  (*Id.*).  Defendant McCoy ejaculated and some of the ejaculate ended up on her sweater.  (*Id.* at 224).

105.    After McCoy abused the plaintiff he brought her back to the holding room and handcuffed her to the table. (Exhibit A Newkirk at *227).

**Response to Paragraph 105**

Not disputed.

106.    From the time Officer Pav left the Juvenile Squad Room until the time McCoy brought the plaintiff back to the holding room the plaintiff did not see Officer Pav at all. (Exhibit A Newkirk at *229).

**Response to Paragraph 106**

Not disputed.

107.    When plaintiff was brought back to the holding room another arrestee named Victoria Harris was present. (Exhibit A Newkirk at *229-230).

**Response to Paragraph 107**

Not disputed.

108.    Victoria Harris was not brought into the precinct until 3:50 p.m. (See Exhibit C; Prisoner Activity Log for Victoria Harris).

**Response to Paragraph 108**

Not disputed.

109.    Officer McCoy left the holding room right after handcuffing the plaintiff to the holding room table. (Exhibit A Newkirk at *231).

**Response to Paragraph 109**

Not disputed.

110.    Officer Pav was not in the holding room when McCoy left. (Exhibit A Newkirk at *231).

**Response to Paragraph 110**

Not disputed.

111.    Officer Pav did not come into the holding room until after McCoy had left. (Exhibit A Newkirk at *232).

**Response to Paragraph 111**

Not disputed.

112.    When plaintiff saw Officer Pav in the holding room plaintiff asked Officer Pav if McCoy was married. (Exhibit A Newkirk at *234).

**Response to Paragraph 112**

      Not disputed.

113.    When plaintiff asked Officer Pav if McCoy was married, Officer Pav asked plaintiff "Why? You like white chocolate?" (Exhibit A Newkirk at *234).

**Response to Paragraph 113**

      Not disputed.

114.    A couple of hours after Officer Pav and McCoy had left the precinct the plaintiff asked another officer if she could go to the hospital. (Exhibit A Newkirk at *234-238).

**Response to Paragraph 114**

      Not disputed, although Ms. Newkirk asked twice if she could go to the hospital.

(Exhibit A, Newkirk at 237).

115.    Plaintiff asked to go to the hospital because she was having an anxiety attack. (Exhibit A Newkirk at *235).

**Response to Paragraph 115**

      Not disputed.

116.    Plaintiff was given her medication while at the first precinct. (Exhibit A Newkirk at *241).

**Response to Paragraph 116**

      Not disputed.

117.    At no time after being abused by McCoy until she was released from court the next day did the plaintiff say anything to anyone about the abuse she was subjected to by McCoy. (Exhibit A Newkirk at * 244-248).

**Response to Paragraph 117**

Not disputed.

118.    Upon arriving at the first precinct Officer McCoy to the plaintiff to the Sergeants window to log her in. (Exhibit B, Pav at *80).

**Response to Paragraph 118**

Not disputed.

119.    Upon arriving at the first precinct Officer Pav went into a computer room to search the plaintiff's bag. (Exhibit B, Pav at *80).

**Response to Paragraph 119**

Disputed.   The Suffolk County Police Department's Internal Affairs Bureau Report on the subject incident concluded that this testimony from Defendant Pav "contradicts what he originally told the FBI investigators" and that "Pav's original statement to FBI stated he searched the bag when Newkirk was presented to the desk sergeant." (Exhibit 1 at p. 10; Exhibit 6 at p. 16).

120.    After searching the plaintiff's bag Officer Pav brought the bag to Community Support Office (CSU) in the basement of the precinct. (Exhibit B, Pav at *82).

**Response to Paragraph 120**

Not disputed that plaintiff's bag was brought to the Community Support Office in the basement of the precinct but dispute that this occurred immediately after Pav searched the bag in the precinct.  In an interview with the FBI, Defendants Pav and McCoy brought Ms. Newkirk to the holding area and then went to the basement of the precinct together to process the arrest. (Exhibit 6 at p. 17).

31

121.    Officer Pav got to the basement around 11:05 a.m. (Exhibit B, Pav at *85).

**Response to Paragraph 121**

Disputed.  Defendant Pav told the FBI that he and McCoy went to the Crime Section Office in the basement around lunchtime and after bringing Ms. Newkirk to the holding area.

122.    When Officer Pav got to the basement he started doing the arrest paperwork for the plaintiff. (Exhibit B, Pav at *85).

**Response to Paragraph 122**

Not disputed.

123.    It took Officer Pav about two hours to do the arrest paperwork. (Exhibit B, Pav at *86).

**Response to Paragraph 123**

Disputed.  In an interview with the FBI, Defendant Pav stated that he and McCoy were in the Crime Section Office in the basement of the precinct "for approximately one (1) hour" and that most of the information for the arrest paperwork was already pre-populated:

> Pav stated most of the paperwork completed after NEWKIRK's arrest was computerized. PAV explained that much of the information needed for the computerized paperwork was pre-populated because NEWKIRK had prior contacts with the SCPD. PAV stated he (PAV) only updated NEWKIRK's address. PAV did not update NEWKIRK's tattoos or phone numbers.

(Exhibit 6 at p. 17).

124.    Officer Pav went upstairs in the precinct sometime between 1:00 p.m. and 2:00 p.m., but it was closer to 2:00 p.m. (Exhibit B, Pav at *91-92).

**Response to Paragraph 124**

Not disputed that Defendant Pav was upstairs at some time between 1:00 p.m. and

2:00 p.m. but dispute that Defendant Pav is able to pinpoint the time as closer to 2:00 p.m. given

his inconsistency in Paragraph 123 and his admissions that he did not recall what time he sat

down to eat lunch (Exhibit 3 at p. 93), how long the lunch break was (*Id.* at 95), or when

Defendant McCoy came to lunch or left lunch to go to Ms. Newkirk (*Id.* at 96).


125.    Prior to going upstairs Officer Pav had lunch with McCoy and other officers in
the CSU office in the basement. (Exhibit B, Pav at *93-94).

**Response to Paragraph 125**

Not disputed.


126.    While in the CSU office Officer Pav had a conversation with McCoy about
debriefing the plaintiff. (Exhibit B, Pav at *92).

**Response to Paragraph 126**

Not disputed.


127.    McCoy went upstairs to start the debriefing before Officer Pav. (Exhibit B, Pav at
*93-97).

**Response to Paragraph 127**

Not disputed.


128.    While in the basement, McCoy did not make any statements about Newkirk other
than about the debriefing. (Exhibit B, Pav at *104).

**Response to Paragraph 128**

Disputed.   Defendant Pav admitted that he fabricated the nine entries in Ms.

Newkirk's prisoner activity log covering the time period 11:55 a.m. to 3:30 p.m. (Exhibit 3 at p.

123-124; Exhibit 7).  As noted by Defendant Pav, the importance of the prisoner activity log is

that it documents the prisoner's "demeanor at the time that you see them and what they're exactly doing." (Exhibit 3 at p. 122-123). The entries are supposed to be made every half-hour, contemporaneously with observation of the prisoner. (*Id.*; Exhibit 12 at p. 31-32). Each entry is supposed to document what the prisoner is doing or how they are feeling. (Exhibit 12 at p. 32). Defendant Pav admitted that he made these nine entries despite not having observed Ms. Newkirk during these times. (Exhibit 3 at p. 124). He indicated in seven that Ms. Newkirk was "sitting", in one that she was "searched", and in another that she was in "property". (Exhibit 7). These fabricated entries included the period during which Ms. Newkirk was sexually assaulted in the juvenile interrogation room. (Exhibit A 194, 198-199; Exhibit 6 at p. 4; Exhibit 9, Exhibit 8 at ¶¶38-42, 58-66).

Defendant Pav admitted that Defendant McCoy was supposed to fill out the prisoner log. (Exhibit 3 at p. 130). When presented with a screenshot of text messages between himself and McCoy on the subject day, he admitted when McCoy texted him "Searched by 6542 at 1330, I left it on the table too", it was reference to McCoy leaving the prisoner log for him to fill in. (Exhibit 3 at p. 135; Exhibit 9).

Also in the screenshot of text messages on the day of the incident, was a text message from Pav to McCoy referencing Pav's arrest that day of Victoria Harris at approximately 3:40 p.m. (Exhibit 9; Exhibit C; Exhibit 3 at 136-137). The text message from Pav to McCoy read: "I'd went good some kid from Bayshore female pass had warrant so we took her and weed in her snatch at thenpct". (Exhibit 9). Defendant Pav confirmed that he texted the message and did not offer an explanation for why he used the term "snatch" to describe how he found marijuana in Ms. Harris's pants. (Exhibit 3 at 136-137).

34

Pav's fabrication of entries and the text message showing coordination between Defendants McCoy and Pav as to the prisoner log, creates a question of fact as to whether McCoy and Pav had discussions about Newkirk beyond the debriefing referenced in this Paragraph and whether Pav knew about what McCoy was doing to Ms. Newkirk.  Further, Pav's use of the term "snatch" to describe the recovery of marijuana from a female suspect shows that he felt comfortable using language derogatory toward women while in uniform.

129.    When Officer Pav entered the debriefing room, McCoy was already speaking to the plaintiff. (Exhibit B, Pav at *106).

**Response to Paragraph 129**

Not disputed.

130.    Officer Pav was in the Juvenile Squad Room for around 10 minutes. (Exhibit B, Pav at *107).

**Response to Paragraph 130**

For the reasons set forth in Response to Paragraph 124, dispute that Defendant Pav can pinpoint with any significant accuracy, the amount of time he was in the Juvenile Interrogation Room.

131.    Officer Pav left the Juvenile Squad Room close to 2:00 p.m. (Exhibit B, Pav at *107)

**Response to Paragraph 131**

Not disputed.

132.    Office Pav left the Juvenile Squad Room to meet with Narcotics Unit personnel in the back parking lot. (Exhibit B, Pav at *107).

**Response to Paragraph 132**

Not disputed.


133.    The meeting with the Narcotics Unit personnel lasted until approximately 2:13 p.m. (Exhibit B, Pav at *110).

**Response to Paragraph 133**

Not disputed.


134.    At a time after 2:13 p.m. McCoy went down to the basement. (Exhibit B, Pav at *111)

**Response to Paragraph 134**

Not disputed.


135.    Pav and McCoy went outside to meet with the Narcotics personnel again. (Exhibit B, Pav at *112).

**Response to Paragraph 135**

Not disputed.


136.    When McCoy was downstairs Pav discussed the debriefing of the plaintiff and Pav expressed that he did not believe she had any useful information. (Exhibit B, Pav at *112).

**Response to Paragraph 136**

Not disputed.


137.    After going outside, it was determined that the Narcotics operation would be delayed and McCoy was unable to participate because he had to leave the precinct at 3:00 p.m. (Exhibit B, Pav at *115)

**Response to Paragraph 137**

Not disputed.

138.    Officer Pav asked another officer to assist and went out with the Narcotics team. (Exhibit B, Pav at *115).

**Response to Paragraph 138**

Not disputed.


139.    From the time Officer Pav left the debriefing of the plaintiff in the Juvenile Squad Room until the time he left for the narcotics investigation, Pav was never on the main floor of the precinct. (Exhibit B, Pav at *116).

**Response to Paragraph 139**

Not disputed.


140.    During this same period of time the plaintiff was always on the main level of the precinct. (Exhibit B, Pav at *116).

**Response to Paragraph 140**

Not disputed.


141.    During the narcotics investigation Officer Pav made an arrest of a female named Victoria Harris. (Exhibit B, Pav at *117; Exhibit C, Harris Activity Log).

**Response to Paragraph 141**

Not disputed.


142.    Officer Pav returned to the first precinct after the narcotics arrest at approximately 3:50 p.m. (Exhibit C).

**Response to Paragraph 142**

Not disputed.


143.    When Officer Pav returned to the first precinct after having made the narcotics arrest he noticed that the Prisoner activity Log for the plaintiff was blank for 11:25 on. (Exhibit B, Pav at *122).

**Response to Paragraph 143**

For the reasons set forth in Response to Paragraph 128 and the response herein, dispute that Defendant Pav stumbled on the blank Prisoner Activity Log after returning to the precinct. The text message from Defendant McCoy to Pav at 2:13 p.m. (Exhibit 9) demonstrates coordination between McCoy and Pav as to the entries on the prisoner log before Pav even left the precinct for the narcotics operation. Given the short length of the message, a reasonable juror could infer that Pav understood what was being asked of him, which creates a question of fact as to whether McCoy and Pav had earlier discussed what McCoy planned to do with Ms. Newkirk and how Pav would cover for him.

144.    Officer Pav filled in the entries on the Prisoner Activity Log from 11:55 to 17:30 (5:30 p.m.) (Exhibit B, Pav at *121).

**Response to Paragraph 144**

Not disputed but note that the entries were not just "filled in", but fabricated, as detailed in Response to Paragraph 128.

145.    Officer Pav filled in the entries from 11:55 until 3:30 p.m. but he did not actually witness any of the events the entries reflected. (Exhibit B, Pav at *123).

**Response to Paragraph 145**

Not disputed.

146.    After Officer Pav left the precinct for the narcotics assignment McCoy texted him with information regarding the time the plaintiff was searched. (Exhibit B, Pav at *134-135).

**Response to Paragraph 146**

Dispute that Pav had already left the precinct premises when McCoy had texted him with the information regarding the search and the prisoner log. On pages 134-135 of the

deposition transcript, Pav does not testify that he received the text after he had left.  (Exhibit 3 at 134-135).  The timestamp on the screenshot of the text message indicates that it was sent at 2:13 p.m.  The image of the Automatic Vehicle Locator (AVL) for Pav's vehicle, provided by the County in discovery, indicates that his vehicle was still in the precinct parking lot as late as 2:36 p.m. (14:36).  (Exhibit 10).

147.   When Officer Pav returned to the precinct he assumed that Officer McCoy had filled out the Prisoner Activity Log for the plaintiff because McCoy was dealing with the plaintiff at the specific times. (Exhibit B, Pav at *152).

**Response to Paragraph 147**

Dispute this Paragraph for the reasons set forth in Response to Paragraphs 128 and 143.

148.   When Officer Pav saw that the Prisoner Activity Log was empty he just went down and filled in the activity log. (Exhibit B, Pav at *152).

**Response to Paragraph 148**

Dispute this Paragraph for the reasons set forth in Response to Paragraphs 128, 143, and 144.

149.   Officer Pav filled in the activity log because he was in a rush and on overtime with another arrestee. (Exhibit B, Pav at *152)

**Response to Paragraph 149**

Dispute this Paragraph for the reasons set forth in Response to Paragraphs 128, 143, and 144.

150.   On March 16, 2017 Officer Pav was required to keep a memo book. (Exhibit B, Pav at *185).

**Response to Paragraph 150**

Not disputed.

151.    Officer Pav did not complete a memo book for March 16, 2017. (Exhibit B, Pav at *186-187).

**Response to Paragraph 151**

Not disputed.

152.    Officer Pav's Sergeant did not always require Officer Pav to keep a memo book. (Exhibit B, Pav at *185-186).

**Response to Paragraph 152**

Not disputed.

153.    Officer Pav did not have a memo book for the day before March 16, 2017. (Exhibit B, Pav at *186).

**Response to Paragraph 153**

Not disputed.

154.    Officer Pav did not have a memo book for the day after March 16, 2017. (Exhibit B, Pav at *186)

**Response to Paragraph 154**

Not disputed.

155.    At no time on March 16, 2017 was Officer Pav ever aware, nor did he become aware that Christopher McCoy had sexually abused or committed misconduct to the plaintiff. (Exhibit B, Pav at *195).

**Response to Paragraph 155**

Disputed for the reasons set forth in each of the Responses herein, particularly the Responses to Paragraphs 5, 6, 25, 33, 39, 40, 42, 53, 54, 55, 56, 57, 58, 59, 60, 61, 119, 123, 124, 128, 143, 144, 145, and 148.

156.     Officer Pav was not personally involved in any decision to permit the plaintiff to go to the hospital or not.

**Response to Paragraph 156**

Not disputed.

157.     Plaintiff has no evidence that Officer Pav was personally involved in any decision to permit the plaintiff to go to the hospital or not.

**Response to Paragraph 157**

Not disputed.

158.     No custom and/or policy of the Suffolk County Police Department caused any member of the Suffolk County Police Department to violate the plaintiff's constitutional rights.

**Response to Paragraph 158**

Disputed for the reasons set forth in the expert report of Edmund Hartnett.

(Exhibit 11 at 23-28, 31-32, & generally).

159.     Plaintiff has no evidence that any custom and/or policy of the Suffolk County Police Department caused any member of the Suffolk County Police Department to violate the plaintiff's constitutional rights.

**Response to Paragraph 159**

Disputed for the reasons set forth in the expert report of Edmund Hartnett.

(Exhibit 11 at 23-28, 31-32, & generally).

160.     Plaintiff never filed a Notice of Claim pursuant to the New York State General Municipal Law in relation to any of her claims.

**Response to Paragraph 160**

Not disputed.

41

**ADDITIONAL STATEMENT OF UNDISPUTED FACTS PURSUANT TO RULE 56.1(b)**

1.      Pav ran the search on Newkirk's ID.  (Exhibit 1 at p. 4 & Exhibit 2 at p. 52).

2.      The traffic-related charges for which warrants were issued against Ms. Newkirk would ultimately be dismissed.  (Exhibit 4).

3.      McCoy began searching Ms. Newkirk by reaching into her pockets by Mr. Abiola's car. (Exhibit A, Newkirk at 128).

4.      Defendant McCoy had grabbed and held Ms. Newkirk's breasts "for a while". (Exhibit A, Newkirk at 143).

5.      Ms. Newkirk jumped when Defendant McCoy had touched her nipples. (Exhibit A, Newkirk 143).

6.      McCoy giggled when Ms. Newkirk jumped.  (Exhibit A, Newkirk 143).

7.      When Defendant Pav was in the driver's seat of the police vehicle he had a clear line of sight to McCoy groping Ms. Newkirk's breasts.  (Exhibit A, Newkirk at 143-144; 150, 149 & 151).

8.      In the mugshot area of the precinct McCoy put his hands up Ms. Newkirk's shirt and inside her leggings and told Ms. Newkirk that he thought she liked it.  (Exhibit A, Newkirk at 173).

9.      The first time Ms. Newkirk was brought to the juvenile room McCoy sexually abused her by forcing Ms. Newkirk to touch his penis and perform oral sex on him.  (Exhibit A, Newkirk at 204-208).

10.      Pav exited the juvenile room and told Officer Delfina Rivera that Ms. Newkirk was inside ready to be searched.  (Exhibit A, Newkirk at 214; Exhibit 5 at p. 11, 31-32).

11.     During the second sexual assault in the juvenile interrogation room, Defendant McCoy attempted to pull down Ms. Newkirk's waistband, and then pulled Ms. Newkirk's head down to his penis and forced her to perform oral sex on him.   (Exhibit A, Newkirk at 221-224). Defendant McCoy pulled her face down with enough force to hurt her jaw.  (*Id.* at 222). When Ms. Newkirk resisted, Defendant McCoy told her "don't make it hard."  (*Id.*).  Defendant McCoy ejaculated and some of the ejaculate ended up on her sweater.  (*Id.* at 224).

12.     Pav fabricated the nine entries in Ms. Newkirk's prisoner activity log covering the time period 11:55 a.m. to 3:30 p.m. (Exhibit 3 at p. 123-124; Exhibit 7).

13.     The purpose of the prisoner activity log is to document the prisoner's demeanor and condition at the time of observation.  (Exhibit 3 at p. 122-123; Exhibit 12 at p. 31-32).

14.     The entries in the prisoner log are supposed to be made every half-hour, contemporaneously with observation of the prisoner.  (Exhibit 3 at p. 122-123; Exhibit 12 at p. 31-32).

15.     Each entry is supposed to document what the prisoner is doing or how they are feeling. (Exhibit 12 at p. 32).

16.     Defendant Pav admitted that he made the nine entries covering the period from 11:55 a.m. to 3:30 p.m. despite not having observed Ms. Newkirk during these times.  (Exhibit 3 at p. 124).

17.     Pav indicated in seven of the fabricated prisoner log entries that Ms. Newkirk was "sitting", in one that she was "searched", and in another that she was in "property".  (Exhibit 7). These fabricated entries included the period during which Ms. Newkirk was sexually assaulted in the juvenile interrogation room.  (Exhibit A, Newkirk at 194, 198-199; Exhibit 6 at p. 4; Exhibit 9, Exhibit 8 at ¶¶38-42, 58-66).

43

18.     Defendant Pav admitted that Defendant McCoy was supposed to fill out the prisoner log. (Exhibit 3 at p. 130).

19.     When presented with a screenshot of text messages between himself and McCoy on the subject day, Pav admitted when McCoy texted him "Searched by 6542 at 1330, I left it on the table too", it was reference to McCoy leaving the prisoner log for him to fill in.  (Exhibit 3 at p. 135; Exhibit 9).

20.     Pav left the precinct for the narcotics operation sometime around 2:36 p.m.  (Exhibit 3 at 134-135; Exhibit 10)

21.     In describing the search and arrest of Victoria Harris Pav texted McCoy: "I'd went good some kid from Bayshore female pass had warrant so we took her and weed in her snatch at thenpct".  (Exhibit 9; Exhibit 3 at 136-137).

22.     When Ms. Newkirk asked Pav whether McCoy was married, "Pav did not believe Newkirk's comment was sexual in nature." (Exhibit 6 at p. 19).

23.     In their investigation of the incident, the FBI conducted twenty interviews of individuals involved or associated with the incident including Plaintiff, the Defendant officers, and other officers in the First Precinct.  (Exhibit 6).

24.     There is no T-Stop data recorded for the subject traffic stop by Pav and McCoy nor did Pav articulate a reason for the stop. (Exhibit 3 at p. 25; Exhibit 1 at p. 10-11).

25.     "T-Stop data" is required by the Suffolk County Police Department for all traffic stops and it requires entry of "the person you pulled over and the reason why you pulled them over and the disposition for it."  (Exhibit 3 at p. 23; Exhibit 1 at p. 11).

26.    The Internal Affairs Bureau (IAB) of the Suffolk County Police Department conducted an investigation into the incident and the Report found "The [deposition] transcript corroborates Newkirk's account of the incident as she described in her FBI interviews."  (Exhibit 1 at p. 8).

27.    The IAB report found that Pav's statement to investigators contradicted prior statements to the FBI regarding where he was when the desk sergeant interviewed Ms. Newkirk when she arrived at the precinct.  (Exhibit 1 at p. 10).

28.    In his first interview with the FBI, Pav described Ms. Newkirk as "flirtatious" but in his second interview and in his deposition he admits that she was not flirtatious (Exhibit 6 at p. 8 & 16; Exhibit 3 at 79).

29.    In his April 26, 2017 interview with the FBI, Pav told investigators that McCoy handcuffed Ms. Newkirk at the hood of the police vehicle and walked her to the back of the vehicle and placed her inside. (Exhibit 6 at p. 15-16).

30.    Pav testified that he did not recall speaking or seeing Officer Delfina Rivera. (Exhibit 3 at p. 118).

31.    Because there was no reasonable suspicion to stop the vehicle, no T-Stop entry made by either officer, Officer PAV's Memorandum Book was missing, and there was an inexplicable warrant check done on a passenger in the car, the traffic stop appears to have been a "hunting expedition".  (Exhibit 11 at p. 33).

32.    Several policies of the Suffolk County Police Department as well as the failure to properly supervise officers resulted in the subject incident.  (Exhibit 11 at pp. 23-34).

33.    The criminal complaint filed against McCoy details his harassing text messages to Ms. Newkirk days after the sexual assault.  (Exhibit 13 at p. 3-4).

34.     On October 9, 2018, McCoy pleaded guilty to violating Ms. Newkirk's civil rights.

(Exhibit 14).


Dated:  March 19, 2021
              Patchogue, New York

                                        Respectfully submitted,
                                        **EGAN & GOLDEN, LLP**
                                        *Attorneys for Plaintiff*


                          By:      /s/_____
                                        Brian T. Egan
                                   96 South Ocean Avenue
                                   Patchogue, New York 11772
                                   631.447.8100


                                   MICHAEL J. BROWN, P.C.
                                   *Attorneys for Plaintiff*
                                   Courthouse Corporate Center
                                   320 Carleton Avenue, Suite #2000
                                   Central Islip, New York 11722
                                   631.232.9700