Clerk's Office
Filed Date:  3/18/22

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

LATOYA NEWKIRK,

                          Plaintiff,

       v.

COUNTY OF SUFFOLK, CHRISTOPHER A.
MCCOY, *in his official and individual capacities*,
and MARK PAV, *in his official and individual
capacities*,

                         Defendants.

---------------------------------------------------------------

                                                  **MEMORANDUM & ORDER**
                                                  17-CV-2960 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Latoya Newkirk commenced the above-captioned action on May 16, 2017

against Defendants County of Suffolk and Police Officers Christopher A. McCoy and Mark Pav.

(Compl., Docket Entry No. 1.)  Plaintiff alleges that on March 16, 2017, during a traffic stop and

arrest, Defendants, while acting under color of state law, intentionally and willfully subjected

Plaintiff to *inter alia*, sexual assault, false imprisonment, personal humiliation, and the

intentional and negligent infliction of emotional distress, in violation of 42 U.S.C. §§ 1983 and

1985 and state law.  (*Id*. at ¶¶ 2–3, 6, 14–86.)  Plaintiff specifically alleges that Officer McCoy

sexually assaulted her and Officer Pav failed to intervene in the assault.  (*See id.* at ¶¶ 14–86.)

    Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Plaintiff opposes the motion.[1]  For the reasons discussed below, the Court

grants Defendants' motion for summary judgment in part and denies it in part.

---

[1] (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 40-1; Defs.' Mem. of Law
in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 40-4; Pl.'s Opp'n to Defs.' Mot.
("Pl.'s Opp'n"), Docket Entry No. 41-2.).

## I.   Background

### a.   Factual background

The following facts are undisputed unless otherwise noted. [2]

#### i.   Traffic stop

On March 16, 2017, Plaintiff was a passenger in black sedan driven by Olanrewaju "Larry" Abiola.  (Defs.' 56.1 ¶¶ 2–3; Pl.'s Counter 56.1 ¶ 3.)  At approximately 10:30 AM, Officers Pav and McCoy stopped the vehicle.  (Defs.' 56.1 ¶ 2.)  When the vehicle stopped, Officer Pav approached the driver's side and Officer McCoy approached the passenger side.  (*Id*. at ¶ 7.)  Officer McCoy asked Plaintiff for identification and she produced a benefits card.  (*Id*. at ¶ 8.)  After one of the Officers checked Plaintiff's identification, Officer McCoy returned to the vehicle to inform Plaintiff that there were pending warrants for her arrest.  (*Id*. at ¶¶ 9–10; Pl.'s Counter 56.1 ¶ 9.)  Plaintiff retrieved documents from her purse that she believed demonstrated that the warrants were not active and showed them to Officer McCoy.  (Defs.' 56.1 ¶¶ 11–13.)  Officer McCoy informed Plaintiff that the paperwork did not resolve the warrants and asked Plaintiff to exit the car.  (*Id*. at ¶ 14.)

Once Plaintiff was out of the car, Officer Pav reached into Abiola's vehicle and removed Plaintiff's bag; Plaintiff told Officer Pav that he did not have her permission to take her purse or enter the car.  (*Id*. at ¶ 15.)  Officer Pav put Plaintiff's purse on the hood of the vehicle (or the police vehicle) and searched the bag.  (*Id*. at ¶ 17.)  Plaintiff's back was to the rear passenger door of the vehicle and Officer McCoy was in front of her, facing the car.  (*Id*. ¶ 16.)  While

---

[2] (Defs.' Stmt. of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), Docket Entry No. 40-3; Pl.'s Rule 56.1 Counter-Stmt ("Pl.'s Counter 56.1"), Docket Entry No. 41-1 at 1–41; Pl.'s Rule 56.1 Stmt. of Additional Undisputed Facts ("Pl.'s 56.1"), Docket Entry No. 41-1 at 42–46.)

2

Officer Pav searched Plaintiff's purse, Officer McCoy placed her in handcuffs and searched her. (*Id*. ¶¶ 18–22.)  Abiola was allowed to leave the vicinity in his vehicle.  (*Id*. at ¶¶ 24–25.)

### ii.   The search and assault

Officer McCoy moved Plaintiff near the police vehicle, (*id*. at ¶¶ 33–34), and conducted a search of Plaintiff's person, (*id*. at ¶ 26).  He searched Plaintiff's coat pockets and told her to lift and shake out her bra.  (*Id*. at ¶¶ 27–29.)  Plaintiff replied that she could not because she was in handcuffs and Officer McCoy responded, "I'll do it."  (Defs.' 56.1 ¶¶ 28–29, 37; Pl.'s Dep. dated Oct. 8, 2019 ("Pl.'s Dep.") 131:21–132:20, annexed to Defs.' Mot. as Ex. A, Docket Entry No. 40-5.)  Officer McCoy reached into Plaintiff's bra, putting his hands under her sweater and onto her breasts.  (Defs.' 56.1 ¶¶ 29, 37; Pl.'s Dep. 129:13–16, 143:2–23.)  When Officer McCoy reached into Plaintiff's bra, Officer Pav had just placed Plaintiff's purse into the police vehicle and gotten into the driver's seat.  (Defs.' 56.1 ¶ 39.)  After Officer McCoy put his hand under Plaintiff's sweater, he zipped up Plaintiff's jacket; Officer Pav heard the zipping of the jacket and said to Officer McCoy "we can search her at the precinct."  (Defs.' 56.1 ¶¶ 50–51; Pl.'s Dep. 160:6–16.)

The parties disagree about the location of the parties when McCoy reached into Plaintiff's bra.  Defendants contend that when Officer McCoy put his hands under Plaintiff's sweater and on her breasts, Plaintiff was located behind the open rear passenger door of the police vehicle with her back facing the vehicle, (Defs.' 56.1 at ¶¶ 46, 49, 53), and Officer Pav was in the driver's seat and he had an obstructed view of the frisk or search,[3] (*id.* at ¶ 49). Officer Pav testified that he did not see Officer McCoy place his hands on Plaintiff's breasts, nor

---

[3]  Officer Pav testified that he does not know if Officer McCoy searched or frisked Plaintiff at the scene of the stop.  (Defs.' 56.1 ¶ 56; Dep. of Mark Pav dated Mar. 11, 2020 ("Pav's Dep.") 64:6–8, 71:4–12, annexed to Pl.'s Opp'n as Ex. 3, Docket Entry No. 41-3.)

did he hear Plaintiff protest to stop touching her breasts.  (*Id.* at ¶¶ 58–60; Dep. of Mark Pav dated Mar. 11, 2020 ("Pav's Dep.") 60:5–8, annexed to Pl.'s Opp'n as Ex. 3, Docket Entry No. 41-3.)  Officer Pav also testified that he did not have any conversation with Officer McCoy about any frisk or search. (Defs.' 56.1 ¶ 57.)

Plaintiff contends that when McCoy reached into her bra, she was very close to the police and standing at an angle, facing towards the front of the vehicle.  (Pl.'s Counter 56.1 ¶ 37, Pl.'s Dep. 154:3–8.)  Plaintiff jumped when Officer McCoy touched her breasts and he giggled in response.  (Pl.'s 56.1 ¶¶ 5–6; Pl.'s Dep. 143:20–23.)  When she jumped, Officer Pav was in the driver's seat of the police vehicle and had a clear line of sight to Officer McCoy touching her breasts.  (Pl.'s Counter 56.1 ¶ 39; Pl.'s 56.1 ¶ 7; Pl.'s Dep. 143:24–144:12, 149:15–25, 150:14–20.)

### iii.    Events at the police station

After placing Plaintiff in the police vehicle, the Officers took Plaintiff to the Suffolk County First Precinct.  (Defs.' 56.1 ¶ 62.)  On the way to the police station Plaintiff had an anxiety attack and asked to have the window rolled down, which the officers did.  (*Id.* at ¶ 63.)  They arrived at the First Precinct at around 11:00 AM.  (*Id.* at ¶ 66.)  The officers then handcuffed Plaintiff to a table in the holding room and Officer McCoy searched Plaintiff in the mugshot area of the room, where he put his hands up Plaintiff's shirt and skirt.  (*Id.* at ¶¶ 68–70.)  There were no other police officers in the holding room when Officer McCoy searched Plaintiff.  (*Id.* at ¶ 72.)

Plaintiff was moved to an interrogation room known as the Juvenile Squad Room.  (*Id.* at ¶¶ 74–75.)  There, Officer McCoy forced Plaintiff to touch his penis and to perform oral sex on him.  (Pl.'s Counter 56.1 ¶ 80; Pl.'s Dep. 204:21–25.)  Officer Pav was not present when the

abuse occurred.  (Defs.' 56.1 ¶¶ 81–82.)  Officer McCoy only stopped when there was a noise outside the door and returned Plaintiff to the holding room.  (*Id*. at ¶¶ 85–86.)

At around 2:00 PM, Plaintiff was brought back to the Juvenile Squad Room.  (*Id*. at ¶ 88.)  At some point, Plaintiff was taken from the Juvenile Squad Room to be searched by a female officer, Delfina Rivera.[4]  (Defs.' 56.1 ¶¶ 89–90.)  Officer Rivera testified that Plaintiff did not say anything to her about what Officer McCoy had done to her, and that she did not have any reason to believe that Plaintiff was in distress.  (Pl.'s Counter 56.1 ¶¶ 94–99 (citing Dep. of Delfina Rivera dated Mar. 11, 2020 ("Rivera Dep.") 61:3–8, annexed to Defs.' Mot. as Ex. D, Docket Entry No. 40-9).)  After the search, she returned Plaintiff to the Juvenile Squad Room, where Officer McCoy assaulted Plaintiff a second time, forcing Plaintiff to perform oral sex on him.  (Defs.' 56.1 ¶¶ 100–04; Pl.'s Counter 56.1 ¶ 104.)  To Plaintiff's knowledge, Officer Pav was not present for the second assault.  (Defs.' 56.1 ¶ 106.)  Later, Officer Pav left the precinct to participate in a narcotics operation.  (*Id.* ¶ 138.)

At approximately 3:50 PM, Officer Pav returned to the precinct.  (Defs.' 56.1 ¶ 142; Pl.'s 56.1 ¶ 19; Text Message Screen Shot annexed to Pl.'s Opp'n as Ex. 9, Docket Entry No. 41-9.)  When Plaintiff saw Officer Pav, she asked him if Officer McCoy was married, and he responded by asking Plaintiff "Why? You like white chocolate?"  (Defs.' 56.1 ¶¶ 112–13.)

The prison activity log for Plaintiff includes entries between 11:55 AM to 5:30 PM, all entered by Officer Pav.  (Defs.' 56.1 ¶ 144; Plaintiff's Counter 56.1 at ¶ 128.)  Each entry is supposed to document the prisoner's "demeanor at the time that you see them and what they're

---

[4]  Defendants assert that Officer Pav was not present when Plaintiff was taken from the Juvenile Squad Room to be searched by Officer Rivera.  (Defs.' 56.1 ¶ 90.)  Plaintiff contends that Officer Pav was inside the Juvenile Squad Room with her and exited the room and flagged Officer Rivera to search Plaintiff.  (Pl.'s Counter 56.1 ¶¶ 90, 94–95.)

exactly doing."  (Pl.'s Counter 56.1 ¶ 128; Pl.'s 56.1 ¶ 15 (citing Dep. of Sergeant Michael

Bieber dated Mar. 16, 2020 ("Bieber Dep.") 31:16–32:18, annexed to Pl.'s Opp'n as Ex. 12,

Docket Entry No. 41-12).)  Officer Pav inputted entries from between 11:55 AM to 3:30 PM, but

did not actually witness any of the events that the entries reflected, which included the time

period Plaintiff was assaulted.  (Defs.' 56.1 ¶ 145; Pl.'s Counter 56.1 ¶ 128.)  Officer McCoy

was supposed to fill out the prisoner log because he was managing Plaintiff at the specific times,

but when Officer Pav returned to the precinct and saw that the activity log was empty, he filled it

in.  (Defs.' 56.1 ¶¶ 147–48; Pl.'s Counter 56.1 ¶ 128, Pl.'s 56.1 ¶ 18 (citing Pav's Dep. 130:4–

131:4).)

     Several hours after Officers McCoy and Pav had left the station, Plaintiff twice asked if

she could go to the hospital because she was having an anxiety attack.  (Defs.' 56.1 ¶¶ 114–15.)

Plaintiff was not brought to the hospital but was given her medication at the precinct.  (*Id*. at ¶

116.)  Plaintiff was released the next day.  (*Id*. at ¶ 117.)

     Shortly after Plaintiff was released, she reported the incident to the Federal Bureau of

Investigation (the "FBI") and it conducted an investigation into the incident.[5]  (Pl.'s 56.1 ¶ 23;

FBI Record, annexed to Pl.'s Opp'n as Ex. 6, Docket Entry No. 41-6.)  Plaintiff commenced this

action on May 16, 2017.  (Compl.)

---

[5]  On July 26, 2017, the United States filed a criminal complaint against Officer McCoy,
Compl., *United States v. McCoy*, 18-CR-530 (E.D.N.Y. July 26, 2017), Docket Entry No. 1, he
was arrested, Arrest Warrant, *United States v. McCoy*, 18-CR-530 (E.D.N.Y. July 26, 2017),
Docket Entry No. 2, and on October 9, 2018, he pleaded guilty to violating the civil rights of
Plaintiff, Tr. of Oct. 9, 2018 Guilty Plea Allocution J., annexed to Pl.'s Opp'n as Ex. 14, Docket
Entry No. 41-14.  Then Judge Gary R. Brown of the Eastern District of New York sentenced
McCoy to one year of imprisonment and one year of supervised release.  *See* J., *United States v.
McCoy*, 18-CR-530 (E.D.N.Y. July 25, 2019), Docket Entry No. 35.

### b.  Procedural background

Plaintiff asserts a number of claims in the Complaint, including five federal causes of action and six claims for violations of New York state law.  Plaintiff asserts federal claims of false arrest and imprisonment, excessive force, failure to intervene under 42 U.S.C. § 1983, municipal liability under *Monell*, and conspiracy to interfere with Plaintiff's constitutionally or federally protected rights when motivated by invidiously discriminatory animus under 42 U.S.C. § 1985.[6]  (Compl. ¶¶ 87–106.)  Plaintiff asserts claims under state law for false arrest and imprisonment, assault, battery, negligent hiring and retention, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (*Id.* ¶¶ 107–46.)

On January 25, 2019, the Clerk of Court noticed default against Officer McCoy after he failed to appear or otherwise defend this action, (Jan. 2019 Entry of Default, Docket Entry No. 13), and Plaintiff moved for a default judgment against him, (Feb. 2019 Mot. for Default J., Docket Entry No. 15).  On April 2, 2019, the Court referred Plaintiff's motion for default judgment to Magistrate Judge Peggy Kuo for a report and recommendation, (Order dated Apr. 2, 2019), but delayed ruling on the motion in view of the ongoing litigation as to the other Defendants, (Order dated May 10, 2019).

Defendants moved for summary judgment on Plaintiff's claim against (1) Officer Pav for failure to intervene in the unconstitutional conduct of Officer McCoy, (2) Suffolk County for *Monell* liability, and (3) all Defendants for violations of state law.  (Defs.' Mem. at 2–3.)

---

[6]  Plaintiff does not clearly state her federal claims against Defendants, (*see* Compl. ¶¶ 87–106), and Defendants only move for summary judgment as to Plaintiff's claims against (1) Officer Pav for failure to intervene in the unconstitutional conduct of Officer McCoy, (2) Suffolk County for *Monell* liability, and (3) all Defendants regarding all state law claims.  (Def.'s Mem.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021); *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020).  The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.   Section 1983 claims

Under section 1983, individuals may bring a private cause of action against persons "acting 'under color of state law'" to recover money damages for deprivations of their federal or

constitutional rights. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015); *see also Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019) (quoting *Vega*, 801 F.3d at 87–88).

### i.   Failure to intervene claim

Defendants argue that they are entitled to summary judgment on Plaintiff's failure to intervene claim because there is no evidence that Officer Pav knew or had reason to know that Officer McCoy assaulted Plaintiff. (Defs.' Mem. at 7–8.) In support, Defendants assert that the only evidence on the record that Officer Pav witnessed Officer McCoy's actions is Plaintiff's own inconsistent testimony that she was in Officer Pav's line of sight when Officer McCoy searched her during the traffic stop, (*id.* at 8–9), but Officer Pav's sworn testimony states otherwise. In his sworn testimony, Officer Pav states that he did not know if Officer McCoy searched or frisked Plaintiff at the scene, he did not observe Officer McCoy place his hands on Plaintiff to search or frisk her and did not see Officer McCoy abuse Plaintiff. (*Id.* at 10–11.) Defendants also argue that Officer Pav's action of backfilling the prisoner activity log and making the "white chocolate" comment to Plaintiff are not evidence that he was aware of Officer McCoy's actions because "it is undisputed that [Officer] Pav was not present for the abuse committed by [Officer] McCoy at the precinct, and the notations made to the prisoner activity log occurred after [Officer] McCoy had abused the [P]laintiff." (*Id.* at 12–13.) Defendants argue that, at best, this is evidence that Pav was aware, "after the fact." (*Id.* at 13.)

Plaintiff contends that a reasonable juror could infer from Officer Pav's inconsistent

testimony on material issues as well as his conduct on the day in question, that he was aware of Officer McCoy's actions and had the ability to stop the assault.  (Pl.'s Opp'n at 13.)  In support, Plaintiff asserts that Officer Pav has provided inconsistent testimony about the details of the traffic stop that undermine his claim that he did not observe the arrest, search, or assault.  (*Id*. at 13–14.)  In addition, Plaintiff contends that Officer Pav's conduct, including inputting false entries into the prison activity log "implies prior coordination between [Officers Pav and McCoy]."  (*Id*. at 15.)  Plaintiff also argues that Officer Pav's changing testimony and untruthful conduct are credibility issues that create genuine dispute as to material facts regarding whether he was aware of the assault and was in a position to stop it.  (*Id.* at 15–17.)

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)); *see also Theodat v. City of New York*, 818 F. App'x 79, 82 (2d Cir. 2020) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (quoting *Anderson*, 17 F.3d at 557)).  An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it."  *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016); *see also Terebesi*, 764 F.3d at 243–44.  However, "[a]n underlying constitutional violation is an essential element of a failure to intercede claim under § 1983."  *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)); *see also Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014)

("Because the underlying constitutional claims were properly dismissed, we also affirm the district court's dismissal of [the] plaintiff's failure to intervene claim."); *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("[T]he failure to intervene claim is contingent upon the disposition of the primary claims underlying [it].").

There are genuine disputes of material fact as to whether Officer Pav observed the search and assault of Plaintiff at the traffic stop and whether he had an opportunity to intervene during the repeated assaults against Plaintiff at the precinct. The record indicates that at some point during the traffic stop — while Officer McCoy searched and subsequently assaulted Plaintiff — Officer Pav entered the police vehicle and sat in the driver's seat. (Defs.' 56.1 ¶¶ 39, 49.) Plaintiff testified that during the assault she was on the passenger side of the police vehicle and her back was facing the vehicle at an angle looking "towards the front [of the car]," (Pl.'s Dep. at 144:11–24; 149:19–25; 154:3–8), and Officer McCoy was standing in front of her, (*id.* at 159:8–15). Plaintiff testified that from the driver's seat, Officer Pav had a "clear line" of vision to the assault, (*id.* 150:14–20), and also testified that Officer Pav made a comment about the search when he heard Officer McCoy zipping up Plaintiff's jacket after assaulting her. (Defs.' 56.1 ¶¶ 50–51; Pl.'s Dep. at 160:6–10.) While Officer Pav disputes this and testified that he was not in the driver's seat when Officer McCoy searched and assaulted Plaintiff and did not know if Officer McCoy searched or frisked Plaintiff at the scene of the stop, (Pav's Dep. 64:6–8, 71:4–12), and also testifies that when he reached the driver's seat, Plaintiff was already in the back seat of the vehicle, (*id.* at 61:20–22), a jury, not the Court, must decide which version of the facts to believe. These conflicting accounts raise genuine disputes of material fact as to whether Officer Pav was aware of Officer McCoy's conduct and failed to intervene during the stop or prevent the subsequent assaults from occurring by reporting Officer McCoy's behavior to his

superiors or by ensuring that Officer McCoy was not left alone with Plaintiff. *See Terebesi*, 764 F.3d at 244 (denying summary judgment with regard to a failure to intervene because there were questions of fact concerning whether defendants were in fact unable to intercede in particular uses of force, either because they were not involved in the planning process, or because of the manner, place, and timing of their deployment in a raid); *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988) (recognizing that an officer may be liable for failing to intervene when other officers struck plaintiff three times and then dragged plaintiff across floor; although defendant had no reasonable opportunity to intervene with respect to the blows, a disputed issue of fact existed as to whether the observing officer failed to intervene to prevent plaintiff from being dragged across the floor, because "[h]aving seen the victim beaten, he was alerted to the need to protect [plaintiff] from further abuse," and could be held liable with respect to the dragging); *Martinez v. City of New York*, --- F. Supp. 3d. ---, ---, 2021 WL 4502440, at \*12 (E.D.N.Y. Sept. 30, 2021) (denying summary judgment as to plaintiff's failure to intervene claims because conflicting accounts of the source of plaintiff's injuries and her requests for medical aid raised a genuine dispute of material fact as to whether defendant police officers failed to intervene in the use of excessive force or failed to intervene with medical care); *Snead v. City of New York*, 463 F. Supp. 3d 386, 400 (S.D.N.Y. 2020) (denying summary judgment where involvement in plaintiff's stop and arrest was disputed and officers not personally involved in arrest were "mere feet away" when plaintiff was arrested because defendants did not present undisputed evidence such that no reasonable jury could conclude they had a realistic opportunity to intervene), *reconsideration denied sub nom. Snead v. LoBianco*, No. 16-CV-09528, 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021); *Levy*, 935 F. Supp. 2d at 594–95 (denying summary where there were "genuine disputes of material fact as to [p]laintiff's claim that [defendant police officer] failed to

intervene and prevent [another officer's] use of potentially excessive force"); *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 182–83 (D. Conn. 2003) (denying summary judgment with regard to a failure to intervene claim in "three episodes" of force where it was disputed whether other officers saw and were alerted to the second use of force and could have intervened to prevent it and protect the plaintiff from "further abuse" (quoting *O'Neill*, 839 F.2d at 12)); *see also Anderson*, 477 U.S. at 248 (holding that summary judgment should be denied unless no "reasonable jury could return a verdict for the nonmoving party"); *Henry-Lee*, 746 F. Supp. 2d at 566 ("When considering whether an officer had a realistic opportunity to intercede, a court should consider whether the officer witnessed prior unconstitutional conduct that would alert him to a likelihood of further unconstitutional conduct."); *Jones*, 285 F. Supp. 2d at 182 ("In evaluating a claim of failure to intervene, the court must look separately at different episodes of force that may, together, make up the plaintiff's claim" (citing *O'Neill*, 839 F.2d at 11)).  If Officer Pav observed the assault as Plaintiff contends, a reasonable jury could find that he could have intervened in the subsequent assaults by reporting Officer McCoy's behavior to his superiors and by ensuring that Officer McCoy was not left alone with Plaintiff to provide opportunity to commit the subsequent assaults in the precinct.  In addition, the fact that Officer Pav left Officer McCoy alone with Plaintiff despite several Suffolk County policies prohibiting male officers from transporting and searching female detainees, and improperly recorded Plaintiff's movement inconsistent with the precinct's policies provides additional evidence from which a reasonable juror could conclude that Officer Pav was aware of Officer McCoy's misconduct and failed to intervene.  (*See* Report of Police Procedure Expert Edmund Hartnett ("Hartnett Report") 36, annexed to Pl.'s Opp'n as Ex. 11, Docket Entry No. 41-11; Bieber Dep. 44:2–11, 44:23–45:12, 46:7–12.)

Accordingly, the Court denies Defendants' summary judgment motion as to Plaintiff's claim against Officer Pav for failure to intervene.

### ii. Qualified immunity

Defendants also argue that Officer Pav is entitled to qualified immunity because his conduct was not objectively unreasonable nor was the law clearly established that his alleged conduct was unconstitutional. (Defs.' Mem. at 21.) In support, Defendants argue that there is no evidence to support that Officer Pav had knowledge of the assaults and even assuming that he was aware, it was not objectively unreasonable for Officer Pav to believe at the time he became aware — at the sound of the zipper closing — that there was nothing for him to do to intervene. (*Id.*)

Plaintiff contends that the constitutional right to bodily integrity and to be free from sexual assault is a clearly established right and qualified immunity is not available to Officer Pav because he failed to intervene in both the assault that occurred at the traffic stop and the subsequent assaults at the precinct. (Pl.'s Opp'n at 20–21.)

As discussed above, if Officer Pav observed the initial assault at the traffic stop, he had an affirmative duty to intervene and may have prevented the two subsequent assaults of Plaintiff at the precinct. In view of the conflicting evidence creating disputed issues of fact, the Court denies Defendants' motion for summary judgment based on qualified immunity. *See Fonville v. Yu*, No. 17-CV-7440, 2021 WL 3145930, at *15 (E.D.N.Y. July 26, 2021) ("[B]ecause there are disputed issues of material fact as to the reasonableness of the force used to arrest Plaintiff, for the same reasons, the [c]ourt denies [d]efendants' motion for summary judgment based on qualified immunity for the excessive force claim."); *see, e.g.*, *Thevenin v. French*, 850 F. App'x 32, 36–38 (2d Cir. 2021) (affirming the district court's denial of summary judgment based on

14

qualified immunity where the record contained disputed issues of fact); *Glover v. City of New York*, No. 15-CV-4899, 2018 WL 4906253, at *24, 33 (E.D.N.Y. Oct. 9, 2018) (denying qualified immunity with regard to a failure to intervene claim where "[d]efendants' argument that they [were] entitled to qualified immunity inappropriately relie[d] on disputed facts"); *Sankar v. City of New York*, 867 F. Supp. 2d 297, 307–08 (E.D.N.Y. 2012) (denying qualified immunity with regard to a false arrest claim where "the qualified immunity analysis [was] inextricably linked to . . . genuine and material factual disputes, which are strictly the province of the jury to resolve." (citing *McClellan v. Smith*, 439 F.3d 137, 147–49 (2d Cir. 2006))); *see also Bonilla v. United States*, 357 F. App'x 334, 335 (2d Cir. 2009) ("Although qualified immunity is a question of law for the [c]ourt, if there are factual disputes that bear directly upon whether it was objectively reasonable for an official to believe that he was acting lawfully, these disputes must be resolved by a jury before the legal question can be addressed." (citing *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003))); *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) ("Having failed to intervene to prevent [an] initial excessive force, [officers] are subject to liability — and are not entitled to qualified immunity — for their failure to intervene to prevent [a subsequent] use of excessive force against [p]laintiff."); *Graham v. City of New York*, 928 F. Supp. 2d 610, 623–24 (E.D.N.Y. 2013) (denying summary judgment on a qualified immunity theory because "[a] reasonable jury could believe [the] [p]laintiff's assertion that . . . not even arguable probable cause existed and there was no basis for [the defendants] to arrest [the plaintiff] or use any force against him"); *Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) ("[S]ummary judgment is inappropriate when there are genuine disputes of material fact 'concerning what the officers who failed to intervene

15

observed regarding the other officers' alleged violations of plaintiffs' constitutional rights.'"

(quoting *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012))).

### c.  Municipal liability

Defendants argue that they are entitled to summary judgment as to Plaintiff's municipal

liability claim because there is no evidence that a Suffolk County policy or custom caused the

alleged constitutional violations perpetrated by Officer McCoy, nor is there any evidence of a

widespread or pervasive practice among police officers of unconstitutional abuse of the rights of

civilians, or that any policymaking official was aware of constitutional injury, or the risk of

constitutional injury, but failed to take appropriate action to prevent the violations of

constitutional rights.  (Defs.' Mem. at 14–19.)

Plaintiff contends that Defendants' request for summary judgment is inappropriate

because Defendants failed to train or supervise police officers by deliberately ignoring the risk to

female arrestees and detainees during interrogation and processing at the precinct.  (Pl.'s Opp'n

at 18–19.)  In support, Plaintiff asserts that Suffolk County was well aware of the risks associated

with female prisoners being left alone with male officers because it maintains a policy that

prohibits the transport of a female prisoner in a police vehicle by a single male officer, yet does

not maintain a similar policy for female arrestees during interrogation or processing at the

precinct.  (*Id*.)  In addition, Plaintiff argues that Suffolk County failed to supervise its officers

because the supervisors of Officers Pav and McCoy (1) "demonstrate[ed] a complete lack of

knowledge on the procedure for formally disciplining an officer," (2) "sanction[ed] the use of the

juvenile room for non-juvenile "purposes in violation of the New York Family Court Act," (3)

"fail[ed] to check in on [Plaintiff]," (4) allow[ed] officers to choose where to patrol," and (5) "allow[ed] [Officer] Pav to work without maintaining a memo book."[7]  (*Id.* at 19–20.)

To establish a municipal liability claim, a plaintiff is required to plead and prove three elements: "(1) an official policy or custom that (2) cause[s] [the plaintiff] to be subjected to (3) a denial of a constitutional right." *Torcivia v. Suffolk County, New York*, 17 F.4th 342, 355 (2d Cir. 2021) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (same); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))).  A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those

---

[7]  Defendants argue that Plaintiff's municipal liability claim fails, in part, because "there [is not] any evidence of a widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians" in the Suffolk County Police Department. (Defs.' Mem. at 14, 16; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply") at 8, Docket Entry No. 40-11.)  However, the Court does not understand Plaintiff to argue persistent and widespread practice, rather that municipal liability arises from Suffolk County's failure to train or supervise its police officers.  (*See* Compl. ¶ 90 ("Defendant, COUNTY OF SUFFOLK, has failed to take steps to discipline, train, supervise, or otherwise correct the improper, illegal conduct of the Defendants . . ."); Pl.'s Opp'n at 19 ("Here, the need for better supervision was known and obvious . . . [and] [s]erious lapses in supervision at the First Precinct directly contributed to [Plaintiff's assaults].").)  As such, the Court only addresses Plaintiff's argument that municipal liability arises from Suffolk County's failure to train or supervise its police officers.

subordinates. *See O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 142–43 (2d Cir. 2020) (finding that failure to "take appropriate action to prevent or sanction violations of constitutional rights" amounts to deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012))); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick*, 757 F.3d at 62 (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones*, 691 F.3d at 81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

A failure to "supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195–96 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). In addition, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393, 397–98 (2d Cir. 1983) (collecting cases); *McDonald v. City of Troy*, 542 F. Supp. 3d 161, 174 (N.D.N.Y. 2021) ("Policies can be 'pronounced or tacit,' and can take the form of 'either action or inaction.'" (quoting *Lucente*, 980 F.3d at 297)); *see Savarese v. City of New York*, 547 F. Supp. 3d 305, 354 (S.D.N.Y. 2021) ("Inaction can rise to the level of a municipal policy 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). To prove deliberate indifference, the plaintiff must show "that 'the need for more or better supervision to protect against constitutional violations was obvious.'" *Outlaw v. City of*

*Hartford*, 884 F.3d 351, 373 (2d Cir. 2018); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d

Cir. 1995) (same); *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (same).

"An obvious need may be demonstrated through proof of repeated complaints of civil rights

violations." *Vann*, 72 F.3d at 1049.  In addition, the municipality's deliberate indifference can be

"inferred if [prior] complaints of misconduct are followed by no meaningful attempt on the part

of the municipality to investigate or to forestall further incidents" or if the municipality's

response is so patently inadequate to the task as to amount to deliberate indifference.  *Vann*, 72

F.3d at 1049; *see Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir.

2009) ("[D]eliberate indifference may be inferred if the complaints are followed by no

meaningful attempt on the part of the municipality to investigate or to forestall further incidents."

(alteration in original) (quoting *Vann*, 72 F.3d at 1049)).  "[W]hether or not the claims had

validity, the very assertion of a number of such claims put the City on notice that there was a

possibility that its police officers had used excessive force." *Vann*, 72 F.3d at 1049 (first citing

*Ricciuti*, 941 F.2d at 123; and then quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d

Cir. 1986)).

      "The means of establishing deliberate indifference will vary given the facts of the case

and need not rely on any particular factual showing." *Amnesty Am. v. Town of West Hartford*,

361 F.3d 113, 128 (2d Cir. 2004).  "The operative inquiry is whether the facts suggest that the

policymaker's inaction was the result of a 'conscious choice' rather than mere negligence." *Id.*

(first quoting *City of Canton*, 489 U.S. at 389; and then citing *Bd. of Cnty. Comm'rs v. Brown*,

520 U.S. 397, 410 (1997)) (stating that "deliberate indifference . . . requir[es] proof that a

municipal actor disregarded a known or obvious consequence of his action" or inaction (internal

quotation marks omitted)); *Vann*, 72 F.3d at 1050 (finding that a reasonable juror could conclude

that the City's handling of complaints "besp[oke] indifference" even though they were

unsubstantiated because there was evidence that they could be true); *Jenkins v. City of New York*,

388 F. Supp. 3d 179, 192 (E.D.N.Y. 2019) ("A reasonable jury could find that a monitoring and

disciplinary system that disregards any complaint or series of similar complaints because they

are unsubstantiated does not demonstrate a 'meaningful attempt on the part of [the City] to . . .

forestall further incidents,' and it may be reasonably inferred that such a system encourages

similar excesses." (alterations in original) (quoting *Vann*, 72 F.3d at 1050)).

There is insufficient evidence to create a genuine dispute of material fact as to whether a

Suffolk County policy or custom contributed to Plaintiff's assault.  Suffolk County's policy

prohibits individual male officers from transporting or searching female prisoners, demonstrating that

the county was aware of the risk of sexual exploitation of female detainees posed by male police

officers.  (*See* Pl.'s 56.1 ¶ 32; Bieber Dep. 44:2–11, 44:23–45:12.)  The policy was "designed to

protect female prisoners from the possibility of unwanted advances from male officers,"

including sexual assault.  Hartnett Report at 32; Bieber Dep. 46:7–12; *see also Cash v. County of

Erie*, 654 F.3d 324, 335 (2d Cir. 2011) (finding that N.Y. Penal Law §§ 130.05 and 130.25

"recognize the moral certainty of [police officers] confronting prisoners in sexually tempting

circumstances with such a frequent risk of harm to prisoners as to require a complete prohibition

on any sexual activity").  Plaintiff relies on this policy and the Officers' failure to follow other

policies to prove both that the risk was obvious and that Defendants failed to take corrective

action.  However, Plaintiff fails to provide evidence that may lead a reasonable juror to believe

that Defendants were deliberately indifferent to this risk.  Plaintiff does not provide evidence of

any prior or ongoing sexual or physical misconduct by Officer McCoy or any other officer at the

Suffolk County Police Department.  *Vann*, 72 F.3d at 1049 (stating that "[a]n obvious need [for

more or better supervision to protect against constitutional violations] may be demonstrated

through proof of repeated complaints of civil rights violations"); *Castilla v. City of New York*,
No. 09-CV-5446, 2012 WL 5510910, at *7 (S.D.N.Y. Nov. 14, 2012) (finding that the evidence
plaintiff provided to support a failure to supervise claim was insufficient to survive a motion for
summary judgment where the record did not include any prior complaints — apart from the
Internal Affairs Bureau Report investigating the plaintiff's allegation of sexual assault — or any
evidence of the response of policymakers to any such complaints); *cf Cash*, 654 F.3d at 336
(determining that there was sufficient evidence of deliberate indifference to the risk of a sexual
assault based on a single prior allegation of sexual contact between a correctional officer and a
prisoner approximately three years prior because the prior instance of alleged sexual contact
should have "alerted defendants that they could not rely simply on [correctional officers']
awareness of a no-tolerance policy to deter sexual misconduct").  In addition, Plaintiff does not
explain how Officers Pav's and McCoy's failure to follow department procedures "were
endemic" or contributed to "a pattern of similar constitutional violations." *Hernandez v. United
States*, 939 F.3d 191, 209–10 (2d Cir. 2019) (recognizing that where "the [c]omplaint alleges that
the [c]ity's employees acted not with deliberate indifference, but because of a purported policy,"
any constitutional violation is "because of the [c]ity's policy, not because of the [c]ity's failure to
train its employees."); *see Hanson v. New York City*, No. 15-CV-1447, 2018 WL 1513632, at
*21 (E.D.N.Y. Mar. 27, 2018) (finding that the plaintiff failed to support a failure to supervise
claim where plaintiff generally referenced the deficiencies in the patrol guide, "inadequate"
disciplinary actions, and the absence of "de-escalation trainings" and plaintiff failed to
demonstrate any causal link between those general deficiencies and the alleged excessive
exercise of force against him); *Walters v. Suffolk County*, No. 09-CV-556, 2014 WL 940734, at
*7 (E.D.N.Y. Mar. 11, 2014) (dismissing failure to train or failure to supervise claims where the

"[p]laintiff offer[ed] no evidence concerning Suffolk County's training or lack thereof nor d[id] [p]laintiff present any evidence that Suffolk County's policymakers ignored 'the risk that its employees would unconstitutionally apply its policies without more training'" (quoting *Amnesty Am.*, 361 F.3d at 129)); *see also Kovalchik v. City of New York*, No. 09-CV-4546, 2014 WL 4652478, at *6 (S.D.N.Y. Sept. 18, 2014) (finding that plaintiff's evidence was insufficient to survive a motion for summary judgment where she "appear[ed] to assert two distinct arguments — that the [c]ity did not have adequate policies in place, and that it failed to supervise [the officer's] compliance with existing policies — [and] the evidence she offer[ed] to show that the [c]ity had notice of a potential problem, 'such that the need for corrective action or supervision was obvious,' [was] the same for both arguments").

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for municipal liability.

### d.  State law claims

Defendants argue that they are also entitled to summary judgment as to Plaintiff's pendant state claims because she failed to comply with the notice requirements of New York's General Municipal Law.[8]  (Defs.' Mem at 23.)

Plaintiff did not respond to Defendants' notice argument and therefore has abandoned her state law claims.  "Where a partial response to a motion [for summary judgment] is made — *i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court

---

[8]  Defendants incorrectly cite to New York General Municipal Law section 50-h, which explains a municipality's right to demand an examination of the claimant, rather than General Municipal Law section 50-e.  Under New York General Municipal Law § 50-e, a notice of claim must be filed "within ninety days after the claim arises."  N.Y. Gen. Mun. Law § 50-e; *Gutierrez v. City of New York*, No. 15-CV-9907, 2019 WL 1427391, at *4 (S.D.N.Y. Mar. 29, 2019); *see also A.W. by E.W. v. New York Dep't of Educ.*, 519 F. Supp. 3d 128, 135 (E.D.N.Y. 2021).

may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 14 (2d Cir. 2017) (alteration in original) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014)); *Colbert v. Rio Tinto PLC*, 824 F. App'x. 5, 11 (2d Cir. 2020) ("[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition[,]" a practice that has been "expressly approved . . . in the context of summary judgment motions[.]"); *see also Ziming Shen v. City of New York*, 725 F. App'x 7, 17 (2d Cir. 2018) (affirming the district court's finding that the plaintiff abandoned claims that she did not address in her opposition to summary judgment); *Hernandez v. County of Nassau*, No. 17-CV-1646, 2022 WL 513929, at *18 (E.D.N.Y. Feb. 20, 2022) (finding plaintiff's claim for municipal liability abandoned where he "did not formally withdraw his claim against Nassau County for municipal liability under *Monell*, [and] he neither mention[ed] this claim nor respond[ed] to [d]efendants' arguments in support of [summary judgment]"); *Connelly v. Ferguson,* No. 20-CV-64, 2022 WL 123800, at *3 (D. Vt. Jan. 13, 2022) (finding plaintiff's state law tort claims of assault, battery, intentional infliction of emotional distress, and negligence had been abandoned where defendants moved for summary judgment on each of these claims but plaintiff did not oppose defendants' arguments in his briefing); *Curry v. Keefe*, No. 18-CV-208, 2021 WL 1087444, at *6 (D. Vt. Mar. 22, 2021) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one claim and the party opposing summary judgment fails to address the argument in any way." (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))). "Even '[w]here abandonment by a counseled party is not explicit,' a court may infer abandonment 'from the

papers and circumstances viewed as a whole.'"  *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (alteration in original) (quoting *Jackson*, 766 F.3d at 196).

      While Plaintiff did not formally withdraw her state law claims against Defendants, she does not mention these claims nor does she respond to Defendants' arguments in support of dismissal.[9]  (*See generally* Pl.'s Opp'n.)  Accordingly, the Court dismisses Plaintiff's state law claims as abandoned.  *See Jackson*, 766 F.3d at 198 (holding that "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned"); *see also Colbert*, 824 F. App'x at 11; *Maher v. All Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267–68 (E.D.N.Y. 2009) (collecting cases and stating that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way" (quoting *Taylor*, 269 F. Supp. 2d at 75)).

---

[9]  Moreover, there is no evidence before the Court that Plaintiff complied with the notice requirement.  (*See* Defs.' 56.1 ¶ 160 ("Plaintiff never filed a Notice of Claim pursuant to the New York State General Municipal Law in relation to any of her claims.").)

**III.  Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for summary judgment

with respect to Plaintiff's claim that Officer Pav failed to intervene and grants Defendants'

motion for summary judgment with respect to Plaintiff's municipal liability and state law claims.

Dated:  March 18, 2022
        Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge